BENJAMIN M. McLYMAN, *Atty. Gen. ex rel* EDWARD T. HOGAN *et al. vs.* CHARLES H. HOLT, *Mayor et als.*

JULY 1, 1930.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Barrows, and Murdock, JJ.

MURDOCK, J. This is a petition for a writ of mandamus to be directed to the mayor, common council, board of aldermen and joint standing committee of the fire department of the city of Pawtucket, commanding them to establish a two platoon system in the fire department of said city, to make rules and regulations governing the same, to appropriate such sums of money, to take such further action and to pass such ordinances as may be necessary to carry out the provisions of an act of the General Assembly passed at the January Session, 1924, Public Laws, 1924, Chapter 561, so much of said act as is pertinent is as follows: "An Act Authorizing the City of Pawtucket to Establish a Two Platoon System for the Fire Department in said city, and Amending Section 4 of Chapter 1110 of the Public Laws of 1914.

"Section 1. The city of Pawtucket accepting the provisions of this act, as hereinafter provided, shall establish a two platoon system in the fire department.

"Sec. 2. The joint standing committee on fire department of the city council of the city of Pawtucket shall make rules and regulations governing the said two platoon system.

"Sec. 3. The city council of said city is hereby authorized to appropriate such sums of money, to take such further action, and to pass such ordinances as may be necessary to carry out the provisions of this act.

"Sec. 4. This act shall be submitted to the electors qualified to vote at the election of the mayor in said city of

Pawtucket at the election on the first Tuesday after the first Monday in November, 1924. The board of canvassers of registration of said city shall cause to be printed upon the ballots to be used in said election, the question, 'Shall the act passed by the general assembly at its January session, A. D. 1924, authorizing the city of Pawtucket to establish a two platoon system for the fire department in said city, be accepted?' If a majority of all such qualified electors voting on said question at such election shall vote 'Yes' this act shall be accepted; and if a majority thereof shall vote 'No' it shall be rejected. The votes on said question shall be counted, ascertained and declared by the same officials and in like manner as the votes for candidates for the mayor in said city are required by law to be counted, ascertained and declared.

"Sec. 5. Whenever the city of Pawtucket accepts the provisions of this act, as provided in section 4, the provisions of chapter 1110 of the public laws of 1914, entitled 'An act relative to days off for members of the fire department of the cities of Providence, Pawtucket, Woonsocket, Newport, Central Falls and Cranston,' shall be of no force and effect in the said city of Pawtucket."

The writ of mandamus is most frequently used to compel the performance of some ministerial duty on the part of a public officer, board or commission. If the performance of the duty involves the exercise of discretion or judgment, the writ will not be issued except in cases where there has been an abuse of discretion. 18 R. C. L. p. 116, Sec. 28.

There are precedents, although few in number, for the use of this writ to compel the passage of an ordinance by a city council in cases where the duty to do so is clearly imposed and the terms of the ordinance are indicated by the act imposing the duty with sufficient definiteness to make compliance therewith practically a ministerial act. *Huey* v. *Waldrop*, 141 Ala. 318; *State* v. *Morris et al.*, 155 N. E. (Ind.) 198.

As a prerequisite to the issuance of the writ of mandamus it must appear that there is a plain legal duty to perform

imposed on the respondents and that the writ will be effectual as a remedy. *Putnam Foundry & Mach. Co.* v. *Town Council*, 28 R. I. 422; High Extraordinary Legal Remedies, Sec. 324.

Is the act in question mandatory in intent so as to warrant the issuance of a writ of mandamus to enforce compliance therewith? There is nothing in the title of the act to indicate such intent. On the contrary, the act, so far as appears from the title, is merely permissive.

The form of the question in the referendum gives support to this view. In voting "Yes" or "No" to the question "Shall the act passed by the general assembly at its January session, A. D. 1924, authorizing the city of Pawtucket to establish a two platoon system for the fire department in said city, be accepted?"—the electors certainly could not have thought that they were accepting an act which would compel the city council to establish forthwith a two platoon system in the fire department.

The legislature, of course, had the right to present the referendum to the electors in any form it saw fit or to pass the act without a referendum. *City of Newport* v. *Horton*, 22 R. I. 196. The form of the referendum is important to the present inquiry only as to the bearing it may have on the question of legislative intent. Doubt as to the intention of the legislature to make the act mandatory is increased by comparison of the act in question with a similar act concerning the fire department of the city of Woonsocket passed in 1922. The title of the latter act is "An Act Relative to the Creation of a Two Platoon System for the Fire Department in the City of Woonsocket." The question on the referendum was "Shall the Fire Department in this city be divided into a two platoon system?" In all other respects the two acts are identical except for the name of the respective cities.

In attempting to ascertain whether the intention of the legislature was to make the act under consideration mandatory or discretionary we cannot pass over as without

significance the difference in the titles and the form of the referenda in the two acts.

The contention that the act is mandatory rests upon the use of the word "shall" in the first and second sections thereof, and upon the provision for the repeal of Chapter 1110 of the Public Laws, 1914, as indicating that the establishment of a two platoon system would make unnecessary one day off in five, as provided in said act but the word "authorized" as used in Section 3 connotes discretion. The word "may" is sometimes construed, when the context requires it, to mean "shall" and, conversely, the word "shall" is sometimes the equivalent of "may" when used in a statute affecting action in the future on the part of a governmental agency. *Richborg Motor Co.* v. *U. S.*, 50 S. C. Rep. U. S. 385. On the whole it is extremely doubtful if it appears "that the act which is to be enforced by the mandate is that which it is the plain legal duty of the respondent to perform, without discretion either to do or refuse." *Putnam Foundry & Mach. Co.* v. *Town Council, supra.*

But if it be assumed that the act is mandatory an objection fatal to the granting of the petition arises in that the act is so indefinite in its provisions as to what is required of the city council as to make the writ unavailing as a remedy. *Putnam Foundry & Mach. Co.* v. *Town Council, supra.*

There is nothing in the record that defines what is meant by the term "a two platoon system." Webster's New International Dictionary defines the word "platoon" as "a squad," "a set." Presumably the object in view is a division of the force into two groups or shifts and to thus decrease the hours of service required of individual members of the department. The mandate from this court could only, in the language of the statute, enjoin the city council "to establish a two platoon system." Compliance with the mandate would require the passage of an ordinance in concurrency by the common council, and board of aldermen and the approval thereof by the mayor.

In the absence of any statutory direction to be followed by the city council it might well be that an honest difference

of opinion would arise between the common council and the board of aldermen. For example, one body might desire to have one platoon serve exclusively on night duty and the other body be of the opinion that the two platoons should alternate on day and night duty. And it is conceivable that other differences of opinion as to the best method of establishing this system might arise. In that event the court, if the writ were issued, might find itself under the necessity, in order to vindicate its authority and enforce its order, of dictating an ordinance or ordinances to be passed by the city council of the city of Pawtucket. This is a legislative and not a judicial function and the writ of mandamus will be withheld when its issuance might lead to an invasion of the legislative field.

The case nearest in point which has been called to our attention is *State* v. *Morris et al.*, *supra*. In that case the court had under consideration a general statute applicable to all cities and towns in the State having a population of over 15,000 and a regularly organized and paid fire department. The statute directed that all such fire departments be divided into "two bodies or platoons, one to perform day service and one to perform night service" with directions as to the hours of such service.

The question under discussion in the instant case was not raised, the petition being resisted on the ground that the statute was not mandatory and that it was unconstitutional. It was evidently assumed that the statute was sufficiently definite in its terms to furnish a basis for a mandate directing it to be put in force. The case is, therefore, not of value as a precedent in support of the contention of the relators in the present petition.

For the reasons above stated the petition is denied and dismissed.

*Hogan & Hogan, Edward T. Hogan, Laurence J. Hogan, Mary C. Hogan*, for petitioners.

*James G. Connolly, James Harris, John C. Knowles*, for respondents.