(No. 52288.—

WEST SIDE ORGANIZATION HEALTH SERVICES CORPORATION *et al.,* Appellees, v. JAMES THOMPSON, Governor, *et al.,* Appellants.

*Opinion filed March 21, 1980.—Rehearing denied May 29, 1980.*

William J. Scott, Attorney General, of Springfield (Gary L. Starkman, Special Assistant Attorney General, of counsel), for appellants.

Ronald Barliant and James A. Carney, of Devoe, Shadur & Krupp, of Chicago, for appellees.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

This is a class action which was brought in the circuit court of Cook County to compel officials of the executive branch of the State government to expend funds appropriated by the General Assembly for the use of the Dangerous Drugs Commission (DDC). One of the representative plaintiffs is the West Side Organization Health Services Corporation (WSO), an Illinois not-for-profit corporation which operates a drug-rehabilitation program that receives State funding. The defendants, all of whom are sued in their official capacities, include Governor James Thompson and various State officials.

In their amended complaint, plaintiffs allege that on July 9, 1976, the General Assembly passed a bill which included an appropriation of $3,545,000 to be used by DDC during fiscal year 1977 "For Purchase of Drug Abuse Treatment Services: Payable from General Revenue Fund." By exercising his veto powers on July 9, then Governor Daniel Walker reduced that line item by $100,000 to a total of $3,445,000. On December 15, however, the General Assembly overrode the veto, thereby restoring the amount of the line-item appropriation to $3,545,000. Citing State budgetary reasons, Governor Thompson subsequently directed the Bureau of the Budget to withhold $100,000 of the funds appropriated for use by DDC.

Plaintiff WSO's standing to challenge this action arises, if at all, from its contract with DDC for the Department's purchase of drug-treatment services which was allegedly reduced by the withheld amount. In view of the result we reach, however, it is unnecessary to consider the standing issue.

Plaintiffs sought declaratory and injunctive relief, as well as writs of *mandamus* and prohibition, to prohibit the concerned State officials from interfering in the allotment

or expenditure by DDC of the full $3,545,000 appropriated by the General Assembly, and to compel DDC to expend the disputed $100,000 for the purchase of drug-abuse treatment services from WSO or similar organizations. Plaintiffs also requested temproary injunctive relief to prevent transfer of the disputed $100,000 into the State's general revenue fund, and to compel placement of the $100,000 in a separate account pending the outcome of this litigation. To prevent expiration of the appropriation on June 30, 1977, plaintiffs filed a motion for injunctive relief to compel placement of the disputed $100,000 within the custody of the court. That motion was denied, and the trial court subsequently granted defendants' motion to dismiss the complaint.

After filing a notice of appeal plaintiffs moved the appellate court to place the $100,000 within its custody in order to prevent the lapse of those funds into the State's general revenue fund. That motion was denied, as was defendants' motion to dismiss which alleged that the cause was moot since the disputed funds had lapsed on September 30. The appellate court reversed (73 Ill. App. 3d 179), finding the Governor was without authority to withhold the appropriated funds.

The lapse of funds appropriated by the General Assembly is mandated by the following:

> "All appropriations shall be available for expenditure for the fiscal year or for a lesser period if the Act making that appropriation so specifies. A deficiency or emergency appropriation shall be available for expenditure only through June 30 of the year when the Act making that appropriation is enacted unless that Act otherwise provides.
>
> Outstanding liabilities as of June 30, payable from appropriations which have otherwise expired, may be paid out of the expiring appropriations during the three-month period ending at the close of business on September 30." (Ill. Rev. Stat. 1977, ch. 127, par. 161.)

The 1870 Illinois Constitution similarly provided that

all appropriations were to lapse upon the expiration of the first fiscal quarter following adjournment of the regular session. With respect to the absence of this specific requirement in the 1970 Illinois Constitution, the Committee on Revenue and Finance of the Sixth Illinois Constitutional Convention observed:

"The requirement that appropriations lapse at the end of 'such fiscal quarter' has been implemented by statute to provide that the power to incur obligations lapses on June 30 of the biennium, but authority to pay continues until the end of the next fiscal quarter (September 30). This prevents continuing appropriations, *People ex rel. Millner v. Russel,* 311 Ill. 96 (1924), and prohibits payments after the end of the three month lapse period, *People ex rel. Polen v. Hoehler,* 405 Ill. 322 (1950). However, a person who through no fault of his own fails to receive compensation in full may be paid through the Court of Claims." (7 Record of Proceedings, Sixth Illinois Constitutional Convention 2027.)

This commentary, in our view, represents a clear affirmation by those delegates principally concerned with State finance operations under the 1970 Illinois Constitution of the mandatory lapse of unspent appropriations and the prohibition of payments after the termination of the three-month period following adjournment of each fiscal year. Under the circumstances here involved, the disputed $100,000 lapsed by operation of statute September 30, 1977, thereby preventing the issuance of *mandamus* to compel expenditure of the expired appropriations. (*People ex rel. Polen v. Hoehler* (1950), 405 Ill. 322, 330, citing *People ex rel. Redman v. Board of Trustees* (1918), 283 Ill. 494, and *People ex rel. Downs v. Brown* (1917), 281 Ill. 390.) The disputed $100,000 would accordingly be unavailable to satisfy plaintiffs' claims even if they were to prevail on the merits.

Despite this lapse of funds, however, plaintiffs assert that their claim is not moot primarily because there is an

actual controversy between the parties, there is substantial public interest in a resolution of the dispute, and there is a likelihood of future recurrence of the question here raised. Plaintiffs also contend that this court could award equitable relief notwithstanding the lapse statute.

This court, however, has repeatedly held that where no actual rights or interests of the parties remain or where events occur which render it impossible for the reviewing court to grant effectual relief to either party, the issues raised by the litigation should not be resolved merely to establish a precedent or to govern potential future cases. See *Bluthardt v. Breslin* (1979), 74 Ill. 2d 246, 250-51; *People ex rel. Tucker v. Kotsos* (1977), 68 Ill. 2d 88, 93; *People v. McCullum* (1977), 66 Ill. 2d 306, 316; *Wheeler v. Aetna Casualty & Surety Co.* (1974), 57 Ill. 2d 184, 189-90; *People ex rel. Newdelman v. Weaver* (1972), 50 Ill. 2d 237, 241; *In re Orr* (1967), 38 Ill. 2d 417, 426; *cert. denied* (1968), 391 U.S. 924, 20 L. Ed. 2d 663, 88 S. Ct. 1821; *La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375, 378-79; see also, *Meyer v. Marshall* (1976), 62 Ill. 2d 435, 441; *Dee-El Garage, Inc. v. Korzen* (1972), 53 Ill. 2d 1, 11.

The circumstances involved in *Breslin* are particularly apposite here. After being unseated by the Illinois House of Representatives for failure to meet the two-year residency requirement in the 1970 Illinois Constitution (Ill. Const. 1970, art. IV, sec. 2(c)), the defendant was appointed pursuant to section 25—6 of the Election Code (Ill. Rev. Stat. 1975, ch. 46, par. 25—6) to fill the vacancy which resulted from her removal. The trial court found the statutory method of appointment unconstitutional and, accordingly, enjoined the defendant from acting as a member of the 80th General Assembly. When the case was on appeal before this court, however, the 80th General Assembly had dissolved and the 81st General Assembly had convened with the defendant as a newly-elected

508

member. In view of those events, we held: "If it becomes apparent that an opinion on a question of law cannot affect the result as to the parties or controversy in the case before it, the court should not resolve the question merely for the sake of setting a precedent to govern potential future cases." (*Breslin,* at 251, citing *La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375, 379; *Tuttle v. Gunderson* (1930), 341 Ill. 36, 45-46.) While appeal was pending before the appellate court in the present controversy, the contested appropriation lapsed according to the statutory mandate (Ill. Rev. Stat. 1977, ch. 127, par. 161). In view of the unavailability of the funds necessary for the granting of effectual relief to the parties here involved, the appellate court erred in refusing to dismiss the appeal as moot.

The judgment of the appellate court is accordingly reversed, and judgment of the circuit court dismissing the complaint is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*