Matthew L. BUCKLEY et al.

v.

John J. AFFLECK et al.

No. 83–152–Appeal.

Supreme Court of Rhode Island.

June 6, 1985.

Harry J. Hoopis, Hawkins & Hoopis, Providence, for plaintiffs.

Arlene Violet, Atty. Gen., Carolyn A. Lembo, Sp. Asst. Atty. Gen., for defendants.

## OPINION

BEVILACQUA, Chief Justice.

This is an appeal by the defendants from a judgment of the Superior Court granting the plaintiffs' petition for mandamus in which the plaintiffs seek to compel the defendants to pay them a sum of money appropriated by special legislation passed in 1978.

The plaintiffs, Matthew L. Buckley, William Sylvestri, Joseph Pontarelli, and Armand Montanaro, were employees of the Rhode Island Department of Social and Rehabilitative Services from February 15, 1971, through September 9, 1972. The defendants include John J. Affleck, the former director of the Department of Social and Rehabilitative Services; John Murray, the former director of the State Budget; Anthony Solomon, the former General Treasurer of the State of Rhode Island; and the State of Rhode Island. The plaintiffs contend that during that period they earned overtime pay and that the total amount claimed was $325,422. The defendants acknowledge that plaintiffs claimed such pay but contend that plaintiffs are not entitled to it.[1]

In May of 1978 the General Assembly passed a special act (hereinafter act) entitled "An Act Making Additional Appropriations for the Support of the State for the Fiscal Year ending June 30, 1978." P.L. 1978, ch. 204.[2] This legislation included under Social and Rehabilitative Services a $325,422 appropriation for "Division of Community Services: O'Rourke Children Center overtime"; both parties agreed that this act entitled plaintiffs to compensation for the claimed overtime. At the close of the 1977–78 fiscal year, on June 30, 1978, however, none of the funds provided for in the act had been expended, and according to G.L.1956 (1969 Reenactment) § 35–3–15, funds that are not expended revert to the surplus account in the general fund. The Legislature did not reappropriate these funds for the ensuing fiscal year.

On August 3, 1981, plaintiffs filed a petition for a writ of mandamus in Superior Court. Both parties submitted legal memoranda and separate statements of facts. The trial justice found that the General Assembly, in passing P.L.1978, ch. 204, intended to compensate plaintiffs for their overtime, and further found that defendants were required by §§ 35–3–1 and 35–3–2[3] to comply with the act. Accordingly, he ordered that a writ of mandamus be issued, compelling defendants to pay plaintiffs the designated amount.

We have consistently held that a writ of mandamus is an extraordinary writ and shall issue only where the petitioners have a clear legal right to have the requested act done and when the respondents have a ministerial, legal duty to perform such act without discretion to refuse. *Kritz v. Cianci*, R.I., 474 A.2d 1248, 1249 (1984); *Bionomic Church of Rhode Island v. Gerardi*, R.I., 414 A.2d 474, 475–76 (1980). Had this petition been tried while this act was still in force, both of these prerequisites to an issuance of the writ would have

---

1. Some of the thirty-nine individuals making this claim instituted a lawsuit in the United States District Court for the District of Rhode Island. The trial judge in that court ruled for plaintiffs, finding that the state had failed to pay sixteen individuals overtime for their work. The defendants filed a timely appeal to the First Circuit Court of Appeals, which vacated the judgment of the District Court, and the case was dismissed.

2. This special appropriation apparently resulted from the efforts of plaintiffs' attorney, who successfully lobbied the State Legislature for its introduction and passage.

3. These statutes are now found in the 1984 Reenactment of the General Laws and have not been substantially changed. Generally, G.L. 1956 (1984 Reenactment) § 35–3–1 provides for the appointment of the budget director by the director of administration and sets forth the budget director's duties. The second statute, § 35–3–2, provides that "[t]he general assembly shall annually appropriate such sums as it may deem necessary to pay the administrative and other expenses of the state government."

been satisfied in the case at bar. Public Laws 1978, ch. 204, § 1 states:

"The following sums are hereby appropriated, out of any money in the treasury not otherwise appropriated, to be expended during the fiscal year ending June 30, 1978 for the purposes hereinafter mentioned, such sums to be in addition to any sums heretofore appropriated for the same purposes for the said fiscal year, and the state controller is hereby authorized and directed to draw his orders upon the general treasurer for the payment of such sums, or so much thereof as may be required from time to time, upon receipt by him of properly authenticated vouchers:

\*      \*      \*      \*      \*      \*

*Social and Rehabilitative*
    *Services*
Division of Community
    Services:
    O'Rourke Children
    Center overtime          $325,422.00"

In construing a statute, we must give the words their plain and customary meaning unless the language is ambiguous. *Murphy v. Murphy*, R.I., 471 A.2d 619, 622 (1984); *Rhode Island Chamber of Commerce v. Hackett*, 122 R.I. 686, 690, 411 A.2d 300, 303 (1980). The language of P.L.1978, ch. 204, § 1, can be literally construed since there are no ambiguities. This act clearly states that defendants, at that time, had a duty to make the payments to plaintiffs, who were the designated recipients of this appropriation.

What prevents defendants from fulfilling this duty, however, is the lack of money in the account. The record and the parties' briefs are devoid of any reference to the reason the allocation was not spent. According to the act, "the state controller is hereby authorized and directed to draw his orders upon the general treasurer for the payment of such sums \* \* \* upon receipt by him of properly authenticated vouchers." P.L.1978, ch. 204, § 1. We cannot determine from the record before us what event prevented plaintiffs from being paid;

the only evidence indicates that this money was no longer appropriated at the time plaintiffs filed their petition for mandamus in 1981 or at the time the trial justice issued the writ in 1983. By the terms of the act itself, the money must be spent by the end of the fiscal year 1978, and if it is not, it automatically reverts to the surplus account in the general fund pursuant to § 35–3–15. Further, the Legislature did not reappropriate this money after fiscal year 1978.

To warrant the issuance of a writ of mandamus, it must appear that the writ will be effectual as a remedy. *Aniello v. Marcello*, 91 R.I. 198, 202–03, 162 A.2d 270, 272 (1960); *McLyman v. Holt*, 51 R.I. 96, 98–99, 151 A. 1, 2 (1930); *Pape v. McKinney*, 170 Conn. 588, 595–96, 368 A.2d 28, 32 (1976). Ordering defendants to issue the requested money in the matter before us would be futile since defendants no longer have any money available for making these payments. Courts have generally held that when necessary funds have lapsed or are no longer available, mandamus cannot be used to compel the expenditure of such funds. In *West Side Organization Health Services Corporation v. Thompson*, 79 Ill.2d 503, 38 Ill.Dec. 784, 404 N.E.2d 208 (1980), a disputed appropriation for a drug-abuse treatment program had lapsed by operation of statute at the end of the fiscal year. Since the funds would have been unavailable even if the plaintiffs were to prevail on the merits, the court held that mandamus could not issue. Similarly, in *Commonwealth ex rel. McLaughlin v. Erie County*, 375 Pa. 344, 100 A.2d 601 (1953), a county refused to pay a portion of tax funds received in prior years since all the previous years' allocations had already been spent. Because the funds were not available, the court held that mandamus would not issue.

In the instant case, the trial justice erred as a matter of law in entering judgment for mandamus under circumstances wherein that judgment would have been ineffective and nugatory.

The defendants' appeal is sustained, the judgment appealed from is vacated, the writ heretofore granted is quashed, and the case is remanded to the Superior Court for entry of judgment for the defendants.