James W. O'NEILL, et al.

v.

Mary Jo CARR, et al.

No. 84–45–Appeal.

Supreme Court of Rhode Island.

March 24, 1987.

Joseph R. Palumbo, Jr., Palumbo Galvin & Boyle, Middletown for plaintiffs.

Maryjo Carr, City Solicitor for City of Newport, for defendants.

William P. Robinson III, Edwards & Angell, Providence, as Intervenor.

OPINION

KELLEHER, Justice.

This is a Superior Court civil action in which the plaintiffs [1] seek a writ of mandamus that would compel the city solicitor and the zoning enforcement officer of the city of Newport to revoke certain building permits allegedly issued in violation of the city's zoning ordinance and to compel the defendants to enforce the pertinent zoning-ordinance provisions against buildings already under construction.[2] The dispute came before the trial justice on cross-motions for summary judgment. He granted the defendants' motion and denied the plaintiffs' motion. The plaintiffs now appeal.

The facts in this litigation are undisputed. On April 13, 1979, a group of individuals not involved in this litigation filed an application for a special exception for the construction of multifamily units within the confines of a Newport ocean-front estate known as Bonniecrest. The applicable zoning ordinance at the time permitted multifamily dwellings on such acreage as Bonniecrest by way of special exception. The zoning board granted the application on April 26, 1979.

Three months later, in late July, a building permit was issued authorizing construction of foundations for multifamily units at Bonniecrest. No construction was ever commenced under this permit. Subsequently on May 7, 1980, the Newport City Council amended its zoning ordinance so as

1. Plaintiffs James W. O'Neill, Jane List, Stephen Turbiner, Sheila Turbiner, Susan Fleming and Kathleen Hirsch are owners of condominium units in the Manor House, a building located on real estate in Newport known as Bonniecrest. Plaintiffs Peter W. Rector and Bernice Rector are owners of real estate adjacent to Bonniecrest.

2. Defendant Samuel L. Jernigan is zoning enforcement officer in Newport. Thomas W. Kelly was succeeded as city solicitor by Turner C. Scott who was substituted for Kelly as defendant pursuant to Super.R.Civ.P. 25. Scott, in turn, has resigned the office and the solicitor, Mary Jo Carr, has been named defendant.

to prohibit construction of multifamily dwellings on property having certain dimensions. The Bonniecrest parcel comes within the prohibition.

On August 15, 1980, the original group sold its interest in Bonniecrest to the Bonniecrest Development Company. Notwithstanding the May 1980 prohibition, a second building permit was issued in September 1981 authorizing construction of the foundations for two buildings that were to be used as multifamily dwellings. In mid-October 1981 the Bonniecrest Development Company sold its title and development rights in the Bonniecrest endeavor to Abraham D. Gosman (Gosman), an individual who was allowed to intervene in these proceedings as defendant.

Gosman obtained permits for full construction of both buildings on October 22, 1981. Later Gosman was informed by the then-city solicitor, Thomas W. Kelly, that no more building permits would be issued for any new Bonniecrest construction because of an amendment to the zoning ordinance enacted by the city council in early May 1980. Gosman responded to this motion by filing an application for relief with the zoning board of review.

The zoning board considered Gosman's application at a hearing conducted on February 22, 1982. The hearing focused on whether substantial construction had already begun at Bonniecrest prior to the change in the ordinance. The zoning board found that Gosman had indeed incurred substantial construction costs at Bonniecrest and was therefore entitled to continue.

In the summer of 1982 permits were issued to Gosman for the construction of three more buildings at Bonniecrest. Subsequently, in October 1982, plaintiffs appealed the issuance of the permits to the zoning board, which ruled that plaintiffs' appeal had not been filed within a reasonable time after the issuance of the permits. The plaintiffs appealed the board's decision to the Superior Court, where the appeal is presently pending.

In ruling on the cross-motions for summary judgment, the trial justice declined to issue the prerogative writ of mandamus because of his belief that (1) in zoning matters the only individual authorized to enforce the zoning ordinances by way of litigation is the city or town solicitor in this jurisdiction and (2) mandamus would not lie in this case because plaintiffs had failed to exhaust their administrative remedy.

In describing the city solicitor as the sole enforcement official in zoning matters, the trial justice relied upon G.L.1956 (1980 Reenactment) § 45-24-7 and *Town of Coventry v. Hickory Ridge Campground, Inc.*, 111 R.I. 716, 724, 306 A.2d 824, 828-29 (1973), where this court ruled that only a municipality, acting through its solicitor, could initiate actions to enforce local zoning ordinances.[3] On occasion this court has held that a private individual has standing to bring a mandamus action when the private interest to be protected is independent of the public interest. *Daluz v. Hawksley*, 116 R.I. 49, 351 A.2d 820 (1976).

The plaintiffs have alleged that the proposed multifamily units at Bonniecrest would cause their property to diminish in value, clearly a private or particular interest to be protected. Although the plaintiffs may prevail on the issue of standing, their effort to seek the issuance of the writ of mandamus must be rejected.

This court has consistently ruled that a writ of mandamus is an extraordinary writ that shall be issued only when the petitioner has a clear right to the requested relief sought and the duty to be performed by the official is purely ministerial, rather than one that calls for the exercise of the

---

**3.** General Laws 1956 (1980 Reenactment) § 45-24-7 provides in pertinent part:

"The supreme court and the superior court, within their respective jurisdictions or any justice of either of said courts in vacation, shall, upon due proceedings in the name of such town or city instituted by its town or city solicitor, have power to issue any extraordinary writs or to proceed according to the course of equity or both:

To restrain the erection, alteration or use of any building, structure or other thing erected, altered or used in violation of the provisions of any ordinance enacted under the authority of this chapter, and to order its removal or abatement as a nuisance[.]"

official's discretion. *Buckley v. Affleck,* 493 A.2d 828 (R.I.1985); *Kritz v. Cianci,* 474 A.2d 1248 (R.I.1984); *Bionomic Church of Rhode Island v. Gerardi,* 414 A.2d 474 (R.I.1980).

Although § 1262.02 of the Newport city ordinances states that "[i]t shall be the duty of the City Solicitor, whenever a violation or a contemplated violation of any of the provisions of this Zoning Code is brought to his or her attention, to institute due legal proceedings to compel compliance," we believe that the word "shall" is used in its precatory, rather than its mandatory sense. Revoking a permit or initiating a suit are matters that involve the discretion of the appropriate responsible official. An investigation must be made into what the relevant facts are, and consideration must be given to a variety of factors, including repercussions that may result from obtaining judicial relief. One of plaintiffs' predecessors, Kelly, was concerned about what occurred in the early 1980s when the city council revoked a permit for a concert in which a musical group called Blood, Sweat and Tears was to perform. The revocation gave rise to litigation that made its way through all the federal judicial channels. This controversy is now referred to as *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

There a Federal District Court jury had assessed compensatory damages against the city and the members of the city council in the amount of $72,910, as well as punitive damages against the defendants that totaled $275,000. Fortunately for the municipality and its officials, the Supreme Court ruled that punitive damages could not be recovered in a civil rights action against a municipality because such an entity was not subject to the imposition of such an award.

Furthermore, we would direct the plaintiffs' attention to our recent holding in the *City of East Providence v. Rhode Island Hospital Trust National Bank,* 505 A.2d 1143 (R.I.1986), where the municipality was seeking the removal of an apartment building that was built while an appeal of the zoning board's grant to the builder was being challenged in the Superior Court, which challenge was subsequently upheld. We emphasized in that dispute that a trial justice who is considering a complaint that seeks the removal of a structure erected in violation of the zoning ordinance is required to balance the equities and weigh the hardships to the litigants and determine the practicality of imposing the desired relief, viz, the destruction of the multifamily structure. Thus here, even if the plaintiffs were to prevail on their claim of the illegal issuance of the permits, Newport's zoning enforcement officer and the solicitor might well be presented with the question of just where the equities of the early and the late arrivals to Bonniecrest lie. One of the individuals who would be concerned with the balancing would, undoubtedly, be the city solicitor, making a determination about whether he would proceed with any removal proceedings. It is obvious from what we have said that since there is a question of discretion vested not only in the solicitor but also in the building inspector, the trial justice quite properly denied the request for the writ of mandamus.

The plaintiffs' appeal is denied and dismissed, and the judgment appealed from is affirmed.