DECISION
In these consolidated matters, before this Court are (1) Defendant State of Rhode Island's motion for directed verdict[1] brought pursuant to Rule 50(a) of the Rhode Island Superior Court Rules of Civil Procedure (hereinafter referred to as Rule 50(a)); (2) Defendant State of Rhode Island's motion for a new trial or, in the alternative, for remittitur brought pursuant to Rule 59(a) of our Rules of Civil Procedure (hereinafter referred to as Rule 59(a)); and (3) the decision on Plaintiff's complaint for declaratory judgment in C.A. 90-0264 brought pursuant to General Laws 1956 (1985 Reenactment) 9-30-1
and Rule 57 of our Rules of Civil Procedure (hereinafter referred to as Rule 57).
FACTS AND TRAVEL
In early 1988, Coveco, Inc., Wasserman Realty, Inc., both Rhode Island corporations and Cranwick Associates Limited Partnership, a Massachusetts limited partnership, collectively doing business as "The Mall at Coventry Joint Venture" (hereinafter referred to as Mall Venture), purchased an 8.988 parcel of land in the Town of Coventry for development purposes. The intended development was a single story retail facility.
Following the purchase of the land, Mall Venture sought to determine the jurisdiction of the Division of Freshwater wetlands of the Department of Environmental Management (hereinafter referred to a s DEM) over the subject land. Such jurisdiction, if any, derived from the Freshwater Wetlands Act codified at sections 18 through 24 of Title 2, Chapter 1 of our General Laws, as amended (hereinafter referred to as the Act). Pursuant to the Act and regulations promulgated by DEM to enforce it, on August 24, 1988, the engineering firm engaged by Mall Venture (hereinafter referred to as Engineer) filed a Preliminary Determination Application (hereinafter referred to as PDA). (Plaintiff Exh. 2).
The initial action brought by Mall Venture, C.A. 90-0264, originates from DEM's October 28, 1988 written response to Mall Venture's PDA. (Plaintiff Exh. 3). In completing the PDA, after identifying the applicant's name, entity name, the location of the site to be inspected, the tax assessor's Plat and Lot numbers, Mall Venture, by its stated owner David Wasserman (hereinafter referred to as Wasserman), responded that the area had been flagged and under Brief Description and Purpose of Project indicated:
 "Varification [sic] of flagged wetland is needed to determine capabilities of site." (Plaintiff Exh. 2).
In a cover letter accompanying the PDA, the Engineer requested" . . . a Wetland Determination . . ." of Mall Venture's project. (Plaintiff Exh. 2).
In their October 28th response directed to Wasserman, DEM indicated that DEM had reviewed Mall Venture's request for a "Fresh Water Wetlands Applicability Determination" (88-803D), reported that its staff had inspected the site in question, said site described in Mall Venture's submitted site plan as "Mall at Coventry Joint Venture Tiogue Avenue Assessor's Plat 25/Lots 361, 327 Assessor's Plat 12/Lot 682 Rhode Island Wetland Determination Plan," dated August 31, 1988, and received by DEM on September 2, 1988 and stated:
 "Based upon our observations and review, it is our conclusion that Fresh Water Wetlands, as described by Section 2-1-20 of the Fresh Water Wetlands Act, are present on or adjacent to the subject property. These wetlands do fall under the protection of the Department and are identified by the following types:
 "__________ BOG "__________ MARSH "____X_____ SWAMP "__________ POND
 "____X_____ The Area within 50 Feet of the Edge of any Bog, Marsh, Swamp, or Pond." (Plaintiff Exh. 3).
DEM further responded in the section entitled "Other Comments" as follows:
 "The wooded swamp as illustrated on the site plan and flagged in the field has been verified by this Department. Flag number 9 must be moved 10-feet 320 [degrees] to accurately depict the wetland edge; the 50-feet wetland setback must be revised accordingly. The remaining 13 flags accurately depict the wooded swamp edge." (Emphasis added).
 "The approval of this Department is required for and alteration proposed within the above wetland(s)" (hereinafter referred to as the Letter of Findings). (Emphasis added). (Plaintiff Exh. 3).
According to the testimony of Mall Venture's witnesses (Wasserman, Caito), between receipt of DEM's written response dated October 28, 1988, (Plaintiff Exh. 3) and the receipt of the next written communication from DEM on or about July 20, 1989 (Plaintiff Exh. 7), Mall Venture through its agents had undertaken many tasks to complete the project, including, in part, negotiations with the proposed primary tenant (Stop 
Shop), redrafted and completed site plans and drawings. However, it was not until correspondence dated June 7, 1989, that Mall Venture informed DEM of the scope of the proposed project. Said correspondence included, in part, a cover letter and an updated PDA (hereinafter referred to as latter PDA). (Plaintiff Exh. 5).
The June 7th cover letter stated that the proposed project consisted of a "60,000+ square-foot retail building with associated amenities . . . Three detention basins will control the stormwater runoff and mitigate the impact from the development. The proposed development . . . falls under theinsignificant alteration guidelines for construction near wetlands."" (Emphasis added). (Plaintiff Exh. 5). In the latter PDA, the brief Description and Purpose of Project was stated as "[d]evelopment of single story retail facility." (Plaintiff Exh. 5). Pertaining to the scope of Mall Venture's proposal, the June 7th correspondence provided DEM with the first Site Grading and Utility Plan, Planting Plan, Notes and Details and Drainage report. (Plaintiff Exh. 5).
In response to the latter PDA (88-803D), DEM responded in writing on July 20, 1989, saying, in part,
 " . . . our staff has inspected the site in question . . . It is our conclusion that this proposal represents a SIGNIFICANT ALTERATION of a Freshwater Wetlands for the following reasons.
 "Proposed alterations . . . [are] within state regulated freshwater wetlands . . . .
 "The proposed alterations will result in disturbance and permanent alteration of a ± 0.30 (acres) of the subject state regulated freshwater wetlands.
 "Therefore, a FORMAL application must be made on the enclosed form before further action can be taken by [DEM]. Upon receipt of your application, [DEM] will proceed with . . . processing . . . ." (Plaintiff Exh. 7).
In response, by letter dated August 15, 1989, Mall Venture's engineer acknowledged DEM's determination that the proposed "project as designed represents a significant alteration of a freshwater wetland" and requested a meeting with DEM to discuss alternatives "in an attempt to avoid the lengthy Formal Application Review Process . . . ." (Plaintiff Exh. 8).
According to the testimony of Mall Venture's witness Caito, in response to Mall Venture's letter of August 15th, on August 28, 1989, Mall Venture's representatives (Caito, Gifford and Bernard Wasserman) met with DEM's representatives (Tefft and Cabeceiras) to attempt to persuade DEM to treat the proposed project as an insignificant rather than a significant alteration of freshwater wetlands. DEM supervisor and witness Brian Tefft (herein referred to as Tefft) who testified that four (4) days prior to said meeting, he inspected the subject parcel and determined that additional contiguous unflagged wetlands existed thereon (hereinafter referred to as Bowling Pin).[2] If the Bowling Pin was not contiguous wetland, Tefft testified, DEM would not have jurisdiction over it because of its minimal size.
Mall Venture's witness Caito earlier testified that the Bowling Pin was brought to his attention by Gifford in 1980. Mall Venture's witness, George Gifford (herein referred to as Gifford), an environmental planner engaged by Mall Venture to flag the wetlands on the subject parcel, testified that at the August 28th meeting, DEM informed Mall Venture's representatives that its proposed project was substantial enough to require a Formal Application. Relying on his measurements of the square footage of the Bowling Pin as isolated wetland, Gifford believed that DEM did not have jurisdiction over it. Gifford testified that the Bowling Pin was flagged during his survey of the site but it did not appear on Mall Venture's site plan submitted to DEM. Mall Venture's witness Caito testified that at the August 28th meeting, DEM advised Mall Venture that other wetlands subject to DEM jurisdiction under the Act "may" exist on the development site.
On September 20, 1989, Mall Venture submitted its "Formal Application To Alteration A Wetland" [sic] together with a cover letter, the required fee, and various plans. Said cover letter stated that the proposed project consists of a "60,000+ square-foot retail building with associated amenities. Site utilities will tie into existing utilities on Tiogue Avenue. Three detention basins will control the stormwater runoff and mitigate the impact from the development. Dense plantings are proposed where an alteration of the buffer area would occur. There is no proposed encroachment within the wetland proper." (Plaintiff Exh. 9).
DEM's supervisor Tefft, who was accepted as an expert witness in Freshwater Wetlands, testified that the site plan submitted with Mall Venture's Formal Application was exactly the same as earlier submitted in Mall Venture's request for preliminary determination. (Plaintiff Exh. 4, defendant Exh. I). In other words, said site plan did not indicate the Bowling Pin nor did it contain the alterations required in DEM's July 20, 1989 letter.
By letter dated December 8, 1989, DEM responded to Mall Venture's September 20th correspondence wherein it stated, in part, that:
 "We have commenced review of your application for permission to alter freshwater wetlands which was submitted September 22, 1989 (Application #89-709F). Upon review of the information and site plans submitted in support of the application, we have discovered an error in the delineation of state jurisdictional wetland areas . . . . (Emphasis added).
 " . . .
 "Further review of your application has identified that the delineation submitted with the preliminary determination and reviewed by our staff, in fact, failed to identify a portion of the wetland subject to the jurisdiction of the Freshwater Wetlands Act. The subject area extends northwest of the reviewed flag locations 12 and 13 by, at least, 160 feet. This area is characterized by standing water and wetlands vegetation forming an integral part of the swamp which was identified by the Department to exist on the site [Bowling Pin]. Of additional note, corrections in the wetland edge as previously noted in the Letter of Findings have not been included. (FLags 8, 9, and 10). (Emphasis added).
 "The above mentioned jurisdictional freshwater wetlands will be significantly impacted by the proposal submitted with the formal application (89-709F). Therefore, the Department requires that you revise the freshwater wetland locations, as indicated herein, to accurately reflect the Department's jurisdiction on this site in accordance with the Freshwater Wetlands Act . . . . Without the required corrections, the application cannot be considered complete as before the agency.
(Emphasis added).
 "At this time the Department is completing its review of the application materials submitted with application #89-709F. Upon completion of this review, additional technical deficiencies may be identified which would require your correction. If no other items are identified by this technical review, then you will still have to correct locations of the wetlands areas on a revised site plan as indicated by this letter . . . ." (Emphasis added). (Plaintiff Exh. 10).
Shortly thereafter, on December 22, 1989, Mall Venture's counsel notified DEM in writing that because
 "the Preliminary Determination conducted by [DEM] was essentially in error and that a new determination must be submitted . . . . Mall Venture "believe[s] [DEM has] no authority to reverse your prior determination. Based upon the Preliminary Determination, [Mall Venture] has submitted a formal application to alter and has incurred substantial expenses and delay.
 "We insist you continue processing the formal application in accordance with the Preliminary Determination. Failure to do so will result in court action . . . . At this point we see no alternative but to seek judicial intervention." (Plaintiff Exh. 16).
There being no administrative resolution to this issue, Mall Venture thereafter brought the subject declaratory action.
On January 12, 1990, Mall Venture instituted C.A. 90-0264 seeking declaratory relief and a writ of mandamus (hereinafter referred to as Declaratory Judgment Action) against Robert L. Bendick, Director of Rhode Island Department of Environmental Management (hereinafter referred to as DEM).[3]
 Plaintiff sought, inter alia, a declaration
 "(a) A declaratory judgment that [DEM's] identification and verification of the wetland as determined by the DEM's letter dated October, 1988;
 "(b) A Writ of Mandamus . . . order[ing DEM] to process [Mall Venture's] formal application to alter;
 "(c) Costs, attorneys' fees and such other relief . . . ."
Defendant filed its answer to Plaintiff's complaint on February 6, 1990, wherein Defendant, in part, asserts the affirmative defenses of failure to state a claim upon which relief can be granted, estoppel, waiver and unclean hands.[4]
Two years later, on June 22, 1992, Mall Venture moved to amend its complaint and on July 17, 1992, moved for assignment to the continuous jury trial calendar. Later, by letter dated June 30, 1992, DEM informed Mall Venture that it was "continuing the processing of [Mall Venture's application for permission to alter freshwater wetlands" and specified additional required information from Mall Venture for its application to be "adequate for public notice." (Plaintiff Exh. 20). Said information includes:
 1. A certified copy of the deed and a signed letter of authorization from the property owner is required.
 2. An updated abutters list is required which includes all names and addresses of property owners within 200 feet of the proposed wetland alterations with a radius map which references these properties.
 3. A written narrative for the project is required which describes, in detail, the nature of the subject wetlands areas, and clearly indicates the proposed impacts of the project to the subject wetlands area. The narrative must also outline any mitigating measures to be utilized to reduce impacts of the project on wetlands affected.
 4. Submit revised engineering calculations for the rainfall data used in previously submitted calculations for the project.
 "Please submit the above noted information as soon as possible so that we may complete the processing of your application. Upon receipt of this information, we will determine if it is complete and will notify you as to the specific number of plans needed for notice." (Plaintiff Exh. 20).[5]
According to the Testimony of Mall Venture's witness Wasserman, said letter does not ask Mall Venture to identify the Bowling Pin as wetlands. DEM's witness Albro, Chief of the Freshwater Wetlands division at the relevant time, testified that he concurred with Wasserman's reading of the letter, however, DEM intended to process the outstanding application and DEM would include the Bowling Pin in its notice pursuant to § 2-1-22.
Following Mall Venture's unsuccessful attempt to amend its complaint in C.A. 90-0264 to add money damages and to demand a jury trial, Mall Venture filed a second action, C.A. 92-5040 (hereinafter referred to as Damage Action), naming as Defendant, Anthony Solomon in his capacity as Treasurer of the State of Rhode Island (hereinafter referred to as State). In Count I of the Damage Action, Mall Venture alleged, in part, that:
 "[D]ue to [DEM's] negligence in not properly identifying and flagging the proper wetlands [Mall Venture] has incurred substantial costs in architectural, engineering, survey, and legal fees, based on original letter of October 28, 1988, identifying the edges and buffers of the wetland." (Complaint, paragraph 12).
Plaintiff sought damages in the sum of $100,000 basing its action on General Laws 1956 (1985 Reenactment), § 9-31-1.
In Count II of the Damage Action, Mall Venture alleges that as a consequence of its ". . . relying on [DEM's] letter of October 28, 1988, which `accurately verified wetlands and buffer,' [Mall Venture] went forward with [development] plans . . ." and thereby suffered damages for "lost opportunity costs, compensation on profit, in the amount in excess of $500,000." (Complaint, paragraph 20).[6]
On August 31, 1993, Plaintiff filed a motion to consolidate both matters which was heard and granted on or about October 22, 1993. Thereafter on March 2, 1995, this consolidated matter proceeded to trial with the issues raised in the Damage Action to be decided by a jury and the issues raised in the Declaratory Judgment Action for this Court to decide the facts and apply the law.
After Plaintiff rested, Defendant moved, pursuant to Rule 50(a), for motion for judgment as a matter of law in both cases. After hearing arguments from counsel, the motions were denied and the trial continued to its conclusion.
DEM's initial witness, James Kiley, Sr., president of the Coventry Town Council at the relevant time, testified that on May 28, 1988, said Council allowed a zoning change of the subject parcel from residential to business with certain express stipulations. One of the stipulations, Stipulation C, required "No encroachment will occur on existing wetlands." (Defendant Exh. F). Subsequently, DEM witness Albro testified that within the allotted time, 45 days after public notice of the proposed project, the town could deny the project and if so, DEM could not overrule the town. Section 2-1-21(a).
DEM's employee and witness, Susan Cabeceiras, testified that in response to Mall Venture's PDA dated August 24, 1988, she inspected the subject parcel. Although she did not see any flags in the Bowling Pine, she identified the Bowling Pin in her report. She determined that thirteen (13) flags on-site were properly indicated wetland and were accurately reflected on Mall Venture's proposed plan. Additionally, based on this inspection, DEM's October 28, 1988 letter to Mall Venture indicated required modifications which were unrelated to the Bowling Pin.
Following the close of all evidence, Defendant renewed its motions for judgment as a matter of law. Pursuant to Rule 50(b) of our Rules of Civil Procedure (hereinafter referred to as Rule 50(b)), the Court reserved decision on the motions and submitted the Damage Action to the jury. The jury returned a verdict in favor of Mall Venture in the amount of $1,696,000. Defendant immediately moved, orally, that the Court reduce the judgment to the $100,000 maximum amount permitted under P.L. 1984, ch. 87, § 1, codified at General Laws 1956 (1985 Reenactment) § 9-31-2, titled Limitations of Damages-State. Over the objection of Plaintiff the motion was granted. Subsequently, the State moved for a new trial or alternatively, remittitur.
RHODE ISLAND'S FRESHWATER WETLANDS ACT
Our Freshwater Wetlands Act (hereinafter the Act), codified at G.L. 1956 (1987 Reenactment) § 2-1-18 through § 2-1-24 prohibits any alteration of wetland as defined by the Act without prior approval of the director of DEM. Section 2-1-21. Pursuant to § 20.1 of the Act and for the purpose of administering the Act, DEM promulgated Rules and Regulations entitled "State of Rhode Island Department of Environmental Management Rules and Regulations Governing the Enforcement of the Fresh Water Wetlands Act, March 1981" (hereinafter referred to as Regulations). (Plaintiff Exh. 6). "Freshwater Wetlands," as used in this Act "shall include, but not be limited to, marshes; swamps, bogs; ponds; rivers; river and stream flood plains and banks; areas subject to flooding or storm flowage; emergent and submergent plant communities in any body of freshwater including rivers and streams and that area of land within fifty feet (50') of the edge of any bog, marsh, swamp or pond." Section 2-1-20(d). Section 20 of the Act includes definitions of each of the aforementioned terms including, in part, swamp and bog.
Application for approval to alter a wetland must be made on a form prescribed by DEM (herein referred to as Formal Application), § 2-1-22(a). Prior to submitting the formal application, a request may be made for preliminary determination as to whether or not the Act applies; a preliminary determination shall be made by DEM only after an on-site review of the project and the determination shall be made within thirty (30) days of the request. (Emphasis added). Section 2-1-22(a). More specifically, in evaluating a preliminary determination, DEM "shall, upon review of adequate plans and/or proposed work and upon inspection of the subject property, determine, (a) Whether a fresh water wetland is present on/or adjacent to the subject property in accordance with the standards enumerated in the Act and [the Regulations], and (b) If a wetland is present on/or adjacent to the subject property, whether the proposed alteration is a significant alteration of the subject wetland." (Emphasis added). (Plaintiff Exh. 6). Regulation 4.02. The Act shall be determined to apply if a significant alteration does appear to be contemplated and an application to alter a wetland will be required. Section 2-1-22(a). In determining whether a proposed alteration on a wetland is a "significant alteration" or "insignificant alteration," [DEM] shall consider the effect of the proposed alteration on the capability of the wetland to: (a) Moderate the velocity and volume of the flood flows through storage and/or absorption; (b) Recharge the groundwater supply; (c) Provide wildlife habitat; [and] (d) Provide a recreational environment. (Plaintiff Exh. 6, Regulations 2.16 and 2.22. See also Regulation 4.03). "Within fourteen (14) days after receipt of the completed [Formal application] accompanied by plans and drawings of the proposed project, [DEM] shall notify all landowners whose properties are within two hundred feet (200') of the proposed project and [others] who may have reason in the opinion of [DEM] to be concerned with the proposal." Section2-1-22(a). Site plans [submitted] for all proposed projects "must show the existing site conditions including topography and major cultural features, as well as proposed contours, construction, drainage structures and all other work which may affect the subject wetland . . . ." Regulation 6.02. The technical submissions ". . . must clearly indicate the impact of the proposed project on the subject wetland and any mitigating measures to be utilized to reduce the impact and must be accompanied by a narrative description of the proposed alteration of the wetland . . . . Regulation 6.01. Form "Applications will be processed only when all required submissions are received." Regulation 6.01.
EXHAUSTION OF ADMINISTRATIVE REMEDIES
Under the Act, R.I.G.L. 2-1-20.1, the director is authorized "to adopt, modify or repeal and promulgate rules and regulations . . . in accord with the purposes of §§ 2-1-18 and2-1-24 inclusive, and shall be subject to the administrative procedures act." Chapter 35 of title 42.
No evidence was offered by plaintiff that following the determination made by DEM on December 8, 1989, that they filed an administrative appeal, pursuant to the Administrative Procedures Act, and that its action (for declaratory judgment) was mislabled as such when in fact it was an appeal to the Superior Court from an adverse ruling by an administrative agency.
The requirement that parties exhaust their administrative remedies prior to seeking judicial intervention is favored as
 "(1) it aids judicial review by allowing the parties and the agency to develop the facts of the case, and (2) it promotes judicial economy by avoiding needless repetition of administrative and judicial factfinding, perhaps avoiding the necessity of any judicial involvement." Burns v. Sundlun, 617 A.2d 114, 117 (R.I. 1992).
While there exist an exception to the exhaustion rule where to do so would be an exercise of futility (cf M.B.T. ConstructionCorp. v. Edwards, 528 A.2d 336, 338 (R.I. 1987); Greenwich BayYacht Basin Associates v. Brown, 537 A.2d 988, 992 (R.I. 1980) or where a pure question of law is raised Burns v. Sundlun, supra at 117, plaintiff nowhere has urged that this Court so find. Assuming, arguendo, that plaintiff had requested this Court to find that this matter fits within either of the above exceptions, based upon the facts presented this Court would rule that they failed to establish their entitlement to proceed under either exception.
Strangely, however, defendants were silent on this foundational issue either from ignorance, confusion or mistake. As a consequence the parties as well as the Court were required to expend its valuable time and resources to hear this matter. Therefore, rather than dismissing plaintiff complaints outright on the basis that until plaintiff has exhausted its administrative remedies that the Superior Court should refuse to intervene in the dispute (cf La Petite Auberge v. R.I. Comm. forHuman Rights, 419 A.2d 274, 279) this Court will proceed to address the merits of plaintiff's claims.
MOTION FOR JUDGMENT AS A MATTER OF LAW
When ruling on a directed-verdict motion, now known as a motion for judgment as a matter of law, the trial court must "review all the evidence in the light most favorable to the party against whom the motion is made, without weighing the evidence or considering the credibility of the witnesses, and extract from the record only those reasonable inferences that support the position of the party opposing the motion." Rickey v. Boden,421 A.2d 539, 543 (R.I. 1980). If it is then apparent that no reasonable conclusion in favor of the nonmoving party could be reached, the Court must grant the motion. Adler v. LincolnHousing Authority, 544 A.2d at 576, 579 (R.I. 1988), cert denied,488 U.S. 968, 109 S.Ct. 496, 102 L.Ed.2d 532 (1988).
The foundation of Mall Venture's claims are primarily in its claimed reliance on DEM's response to Mall Venture's PDA wherein DEM "verified" the flagging of the subject parcel by Mall Venture's agent. (Plaintiff Exh. 3, testimony Gifford). Specifically, DEM stated that except for relocation of flag 9, the "remaining 13 flags are accurately depict the wooded swamp edge. The approval of [DEM] is required for any alteration proposed within the above wetlands." (Plaintiff Exh. 3). The most reasonable inferences that may be drawn when viewing the evidence in the light most favorable to Mall Venture include: (1) the Freshwater Wetlands Act applies to the subject parcel because wetlands exist thereon; (2) upon review of Mall Venture's proposed plan submitted with the latter PDA in June 1989, alteration would be a significant alteration meaning that a formal Application is required; (3) except for the flag 9 changes, the 13 flags accurately depict the wooded swamp edge and (4) Mall Venture relied on DEM's preliminary determination (PDA) which is an optional preliminary step enroute to obtaining DEM's approval to alter a wetland under its jurisdiction. Based on the evidence before the Court as stated above, it cannot agree with plaintiff that DEM is liable to Mall Venture for DEM's failure to initially determine that the Bowling Pin, the wetland unflaggedby Mall Venture's agent when submitting the PDA, is a wetland over which DEM has jurisdiction. (Emphasis added). Nor is it reasonable to infer, based on the evidence before the Court, that Mall Venture's reliance equitably estops DEM from claiming jurisdiction over the Bowling Pin, its proposed development constituted a significant alteration of wetland. Excluding the Bowling Pin, Mall Venture failed to make the changes required by DEM in its Letter of Findings and failed to complete its Formal Application.
For these reasons, the State's motion for directed verdict is granted. The jury's award is vacated. Because this motion is granted, the State's motion for new trial or alternatively remittitur need not be reached.
DECLARATORY JUDGMENT
Our declaratory judgment statute " * * * does not license litigants to fish in judicial ponds for legal advice." GoodyearLoan Co. v. Little, 107 R.I. 629, 631, 269 A.2d 542, 543 (1970). Rather, its purpose "is to render disputes concerning the legal rights and duties of parties justiciable without proof of a wrong committed by one party against another, and thus facilitate the termination of controversies. In light of their highly remedial nature then, declaratory judgment statutes should be liberally construed; they should not be interpreted in a narrow or technical sense. Naturally, there remains the prerequisite that the party seeking declaratory relief present the Court with an actual controversy." Millett v. Hoisting Engineers' LicensingDivision, 119 R.I. 285, 291, 337 A.2d 229, 233 (1977).
Mall Venture seeks a declaratory judgment that DEM's "identification and verification of the wetland as determined by the DEM's letter dated October 28, 1988." (C.A. 90-0264 Complaint). DEM has not disputed its verification of the flagged wetland on the subject parcel as detailed in its letter of October 28, 1988. Consequently, in this Court's opinion, there is not an actual controversy before the Court relating to said letter. To the extent that Mall Venture seeks this Court's declaration construing DEM's jurisdiction over the subject parcel is limited to the wetland described in DEM's October 1988 letter, the Court declines to so declare. Such a declaration, in this Court's opinion, would be tantamount to impinging on DEM's statutory authority over wetlands. Accordingly, Mall Venture is not entitled to the declaratory judgment it seeks.
WRIT OF MANDAMUS
In Rhode Island, a writ of mandamus
 "will issue only where the petitioners have a clear legal right to have the act done which is sought by the writ; and where the respondents have a ministerial, legal duty to perform such act without discretion to refuse; and where the petitioners have no plain and adequate remedy at law." Gormally v. Cannon, 119 R.I. 771, 776, 383 A.2d 582, 585 (1978). See also O'Neill v. Carr, 522 A.2d 1213, 1214-15 (R.I. 1987) (citing Buckley v. Affleck, 493 A.2d 828 (R.I. 1985); Kritz v. Cianci, 474 A.2d 1248 (R.I. 1984); Bionomic Church of Rhode Island v. Gerardi, 414 A.2d 474 (R.I. 1980)).
"It is well settled that mandamus will issue to compel a public officer, board, or commission to perform a ministerial duty."Aniello v. Marcello, 91 R.I. 198, 202, 162 A.2d 270, 272 (1960) (citing Newman v. Mayor of Newport, 73 R.I. 435, 57 A.2d 180
(1948); McLyman, ex rel. Hogan v. Holt, 51 R.I. 96, 151 A. 1
(1930)). However, it should be noted that "[t]he writ will not issue to compel a public officer to perform an act the performance of which rests within his discretion." Id. (citingIzzi v. Warwick School Committee, 82 R.I. 76, 105 A.2d 818
(1954)).
In this matter, Mall Venture seeks a writ of mandamus ordering DEM to process Mall Venture's Formal Application to alter wetlands on the subject parcel. Based on the evidence before the Court, by letter dated June 30, 1992, DEM informed Mall Venture that it was continuing the processing of said application and specified certain information from Mall Venture for its application to be adequate. In this Court's opinion, absent the required information, DEM is unable to further process Mall Venture's application and it would be inappropriate for this Court to so order. See D'Amico v. Providence City Council,654 A.2d 307 (R.I. 1995). Accordingly, Mall Venture's petition is denied.
The prevailing party shall submit an order consistent with this decision.
[1] Under the Rules of Civil Procedure, as amended (effective September 5, 1995), the former "motion for directed verdict" is now referred to as a "motion for judgment as a matter of law". Regardless of what it is called, substantively the motion is treated the same cf Montecalvo v. Mandarelli, et al, Supreme Court No. 93-67 appeal slip opinion August 30, 1996.
[2] For clarity sake at trial and herein, the additional unflagged wetlands were and are referred to as "bowling pin" because as drawn on Mall Venture's proposed plan said wetlands resembles the shape of a bowling pin.
[3] On or about July 2, 1992, in its objection to motion to amend Plaintiff's complaint, Defendant, pursuant to Rule 25(d) of our Rules of Civil Procedure, substituted without objection then-Director of the Department of Environmental Management for former Director Bendick.
[4] Defendant never raised in any of its pleadings, during the oral argument, or in its post-trial memorandum "judicial nonintervention" of the Superior Court based upon plaintiff failure to exhaust its administrative remedy.
[5] The testimony, at best, is unclear as to if plaintiff complied with this request.
[6] Mall Venture also alleged in Paragraph 21 of Count II that "[DEM's] actions were tantamount to taking by the government of the [subject] property owned by the [Mall Venture]." At trial, after Mall Venture rested, the Court granted the State's motion for directed verdict as to any "Taking issue."