Louis V. Jackvony, *Atty. Gen. ex rel. vs.* Albert M. Berard.

Same *vs.* Hugo A. Jarret.

Same *vs.* Wilfrid W. LaRochelle.

Same *vs.* Joseph Schmetz.

MARCH 14, 1941.

Present: Flynn, C. J., Moss, Capotosto and Baker, JJ.

BAKER, J. These are petitions in equity in the nature of *quo warranto*, each on behalf of a different relator, brought under general laws 1938, chapter 585, in the name of the attorney general.

We shall hereinafter refer to the relators as the petitioners. The petitions are similar and set out in substance, among other things, that on March 7, 1940 the petitioners were appointed commissioners of the housing authority of the city of Woonsocket, pursuant to the provisions of G. L. 1938, chap. 344, to hold office for certain specified terms; that they accepted the appointments and entered upon the performance of their duties, in which they conducted themselves in

a proper, orderly and legal manner; that on August 28, 1940 the mayor of the city of Woonsocket, Felix A. Toupin, caused to be given to them copies of charges made by him, wherein they were accused of inefficiency, neglect of duty and misconduct in office, and that to such charges the petitioners thereafter filed written objections with the said mayor and with the secretary of said housing authority.

It is further alleged that between the dates of September 12 and October 19, 1940 hearings upon the above charges were held by the mayor, the petitioners being present in person and represented by counsel; that the mayor presided at such hearings, conducted the prosecution, examined witnesses, introduced exhibits, cross-examined the petitioners' witnesses and testified himself in rebuttal; and that on December 6, 1940 he found the petitioners guilty as above charged and ordered them removed as commissioners of said housing authority.

In the petitions it is also set out that on December 7, 1940 the mayor purported to appoint the four respondents to succeed the petitioners as commissioners of said housing authority; that on said last-mentioned date the respondents purported to qualify as commissioners, and since that date have unlawfully assumed, exercised and performed the duties and powers of that office.

The petitions are brought to try title to the offices in question. The petitioners contend that they were unlawfully removed from office as such commissioners by the mayor; that they still are and continuously have been, since March 7, 1940, the duly appointed, qualified and lawful holders of such offices and entitled to exercise and perform all the functions, powers and duties thereof; but that the respondents have usurped and intruded into said offices, which they purport to hold without warrant, title or right; and that they have prevented the petitioners from performing their duties therein. The petitioners pray that they may be confirmed in

their said offices as commissioners of the housing authority of Woonsocket; that the appointment of the respondents by the mayor of that city to said offices be declared illegal and void; and that the respondents be ousted and expelled therefrom.

The petitioners maintain that their petitions should be granted, first, because the evidence and the record show that they were not given a fair hearing by the mayor and that he had prejudged the case against them; and second, that there was no legal, competent or adequate evidence presented at the hearing which justified or supported their removal from office.

An examination of the evidence and the exhibits leads us to the conclusion that the issue raised by these petitions can be disposed of by a consideration of the nature of the charges made by the mayor against the petitioners and a consideration of the evidence presented to support such charges. We shall not discuss, therefore, the matter of the fairness of the hearing given the petitioners, or of the mayor's alleged bias against them.

It is not seriously questioned that in these proceedings, being in equity in the nature of *quo warranto,* the petitioners have the burden of establishing that they were illegally removed from their offices and that they are legally entitled thereto. See *McGroarty* v. *Ferretti,* 56 R. I. 152. They contend that there were no vacancies in these offices and that the certificates of appointment of the respondents, as filed by the mayor, were therefore invalid and of no effect. On the other hand, the respondents contend that the express provisions of § 5 of chap. 344, *supra,* make the certificate of appointment of any commissioner, as filed by the mayor, conclusive evidence of such commissioner's due and proper appointment.

While the words "conclusive evidence" do appear in the section in question, it is obvious that this provision can not

be given the literal and sweeping construction for which the respondents argue, without defeating other express provisions of the statute. It is well established that a statute will be so construed as to reasonably give effect to all its express provisions, if possible.

If the occasion arises when it is admittedly lawful and proper for the mayor to make appointments of commissioners, then by the terms of the statute the certificates are made conclusive evidence of the latters' due and proper appointment. However, in the situation before us, it is clear that there must first have been vacancies in the office in question, brought about by the proper and legal removal of the petitioners, before the respondents can rely upon the above provision of the statute. The construction contended for by them would make the hearing by the mayor upon charges preferred a useless formality. Therefore, the statute in question, standing alone, is of no aid to the respondents. The facts and circumstances in evidence relating to the alleged removal of the petitioners from office must first be considered, in order to determine the correctness of such removal, because upon that rests entirely the validity of the respondents' alleged appointments.

The general object and purpose of housing authority statutes, such as chap. 344, *supra,* are well known. By means of funds advanced by the federal government the local housing authority set up under that act was to acquire land and erect thereon suitable houses to be occupied by families within a low-income range. Such was the purpose of the Woonsocket housing authority. By the express terms of the act it was constituted "a public body and a body corporate and politic", and its powers are extensive. However, before any federal funds became available to the local housing authority the United States housing authority had to be satisfied as to certain facts and conditions, and had to give its approval to certain steps taken by the local body.

By the provisions of chap. 344, *supra,* the authority to appoint commissioners, five in number, in any city was conferred upon the mayor thereof. He could also fill vacancies in such offices. In addition he was given the power to remove said commissioners. Section 8 of the act reads in part as follows: "The mayor may remove a commissioner for inefficiency or neglect of duty or misconduct in office, but only after the commissioner shall have been given a copy of the charges against him . . . at least 10 days prior to the hearing thereon and had an opportunity to be heard in person or by counsel." The mayor is not a member of the local housing authority, has no right to attend its meetings, to take part in its proceedings, or to interfere with the manner in which the authority transacts its business or performs its duties.

The commissioners serve without compensation. Nowhere in the act, chap. 344, *supra,* are the terms "inefficiency", "neglect of duty" or "misconduct in office" defined. Nor are the duties of the commissioners expressly set out therein, except in § 6 which reads as follows: "The authority and its commissioners shall be under a statutory duty to comply or to cause compliance strictly with all provisions of this chapter and the laws of the state, and in addition thereto, with each and every term, provision and covenant in any contract of the authority on its part to be kept or performed."

In the removal proceedings instituted by him the mayor of Woonsocket made some twenty-two charges against the four petitioners. None of these charge any violation of state law or any failure to carry out the terms or obligations of any contract of the authority. Such charges must be considered, therefore, as alleging violations of duties in office as they reasonably are to be inferred from the provisions of this chapter. Counsel for the respondents admits that all of the mayor's charges "may be boiled down to two substantial ones". The first is that the commissioners were guilty of undue and unnecessary delay in selecting a site for the hous-

ing project, thereby endangering the acquisition of a federal grant of money; the second is that the fifth commissioner, named Sherwood, was excluded by the four petitioners from their deliberations and activities, and that the latter carried on certain unauthorized and surreptitious dealings without the knowledge of the authority in its official capacity.

It is clear that charges of inefficiency, neglect of duty and misconduct in office must relate to and have a bearing upon the conduct of the petitioners only in connection with the performance of their duties under the statute as commissioners of the Woonsocket housing authority. Any other kind of inefficiency, neglect or misconduct is obviously immaterial as far as removal proceedings are concerned. Viewed in that light, we have examined the charges made by the mayor and find that many of them are so vague and irrelevant that they furnish no reasonable grounds, under the statute, for removal of the petitioners from their offices.

It is not necessary to refer in detail to such charges. However, the following may be noted as typical, *viz.*, the matter of alleged withholding, from persons who at the time in question were not required to have such knowledge, the details of options obtained on possible sites; the matter of a few trips to Washington by one of the commissioners to confer with federal authorities; the fact that at one meeting of the authority certain federal officials, who themselves made no complaint, were required to wait some time before being admitted to the meeting; the fact that a map was sent to Washington in a certain manner; the fact that the authority did not keep the mayor sufficiently informed of what it was doing, there being no requirement of law that it should; and the fact that certain newspapers attacked the mayor and an alderman in connection with federal housing matters.

On his own request the mayor, though not a party, was nevertheless given permission by us to file, as *amicus curiae*,

and he did file, a brief, so that he might have the opportunity to specifically point out where in the large transcript the evidence appeared which, in his opinion, supported the charges made by him. In his brief he also "boils down" the charges substantially in the same manner as did the counsel for the respondents, as above stated. We have carefully considered the evidence, particularly as referred to in all briefs, and also as such evidence bears upon the charges that the petitioners were guilty of undue delay in selecting a site; that the fifth commissioner, Sherwood, was excluded from the deliberations of the authority; and that surreptitious dealings were carried on by the petitioners in connection with their duties.

In petitions in equity in the nature of *quo warranto,* if questions of fact are involved, we can, and it is our duty, to weigh the evidence. As no objection has been raised to the form in which the present proceedings have been brought, we have weighed the evidence in connection with the above charges, in so far as the latter are relevant and material to the charges and to the petitioners' duties under the statute in question. After so doing we find that it appears by the overwhelming weight of the competent and legal evidence that the petitioners were not guilty of undue delay, of excluding the fifth commissioner from their deliberations, or of surreptitious dealings, in violation of their duties in office under this statute, as charged by the mayor. In fact, even if we apply to these petitions the rule that would have applied if the proceedings had been here on *certiorari,* which rule the respondents erroneously contended was applicable even under these petitions, there is, in our opinion, no competent legal evidence before us which supports any substantial charge of violation of any duty imposed on these officers by the terms of the statute in question.

We shall refer briefly to the evidence. This shows that after their appointment the commissioners met frequently,

did considerable preliminary work, and eventually obtained options on five parcels of land. Under date of June 3, 1940, they received a letter from a federal official advising them not to commit the authority as to a selection of a site until funds were definitely earmarked for the Woonsocket project. Under date of July 3 they were informed that funds had been so earmarked. On July 23 the commissioners voted four to one in favor of the selection of certain land, known as the Lothrop site, as suitable for their purposes. On July 29 they were notified by the federal authorities that such site was not approved. On August 5 the commissioners asked for a reconsideration.

Between that day and August 26 the site in question was further inspected and viewed by the commissioners and by federal officials, and one of the commissioners went to Washington on the matter. Finally, on the date last mentioned the federal authorities definitely refused to approve the Lothrop site, and suggested that one entirely different from the two which had been under discussion be selected. The other site to which the commissioners had been giving serious consideration was known as the Royal Homestead site, which apparently the mayor was inclined to favor. On August 30 the commissioners, including Sherwood, voted unanimously in favor of a parcel of land known as the Brooksay site. This selection was approved by the federal authorities on September 11, 1940.

The evidence on the above issue, in our opinion, merely shows that, in the exercise of their best judgment, the petitioners conscientiously felt that the Lothrop site was best suited for their purposes, and in good faith and in the performance of their duties attempted to convince the federal authorities of that fact. Not being successful, they then chose a third site, following the suggestion above referred to. Further, it was not shown that there was any delay which endangered the obtaining of federal funds for the Woon-

socket housing project. If there was any delay, it was only such as was incident to the reasonable performance of their duties under the statute.

In regard to the fifth commissioner, it appears from the evidence that Sherwood was appointed by the mayor on July 22, 1940 to fill a vacancy caused by the death of one of the original commissioners. The records and minutes of meetings of the authority were fully and carefully kept. They show that at all the meetings of the authority held after his appointment Sherwood either was present or had signed a waiver of notice. There is nothing which shows that material facts were kept from him, or that any official business was done by the authority except at its duly called meetings. Sherwood and the petitioners did not agree on all matters, but the evidence fails entirely to show that he was excluded from their deliberations as a corporate body. In fact, it appears from the records that he voted in favor of the Brooksay site. Casual talks between individual commissioners outside of regular meetings, or investigations made by a particular commissioner for his own satisfaction, do not amount to an exclusion of the fifth commissioner from the deliberations of the authority as a corporate entity. Finally, we perceive in the record no competent evidence of any surreptitious dealings on the part of the petitioners in connection with their official duties, as prescribed by the statute.

We find that the petitioners have sustained the burden of showing that they were unlawfully and improperly removed from their offices as commissioners of the Woonsocket housing authority. In our opinion the evidence presented at the hearings held by the mayor, in so far as it relates to what may be construed as material and substantial charges against the petitioners in connection with the performance of their official duties, did not substantiate such charges and did not warrant or justify the petitioners' removal by the mayor from their aforesaid offices. His action in that regard was, therefore, improper.

Such being the case, no vacancy was created or existed which it was necessary or proper for the mayor to fill at the time he attempted to appoint the respondents. Such appointments were therefore illegal and void.

We decide that the petitioners are legally entitled to the offices of commissioners of the Woonsocket housing authority; that the respondents are not so entitled; and that each respondent be absolutely forejudged and excluded from exercising or using the office of commissioner of the housing authority of said city of Woonsocket or any of the authorities or privileges thereof, and that in each case a decree be entered accordingly.

The petitions are set down for entry of such decrees by the court on March 21, 1941.

*Ira Lloyd Letts, Alan P. Cusick,* for relators.

*John J. Mee,* for respondents.

*Felix A. Toupin, Amicus Curiae.*