James **HAWTHORNE, Executive Director, Housing Authority of the City of Port Arthur, Texas, and the Commissioners of the Port Arthur Housing Authority, Appellants,**

v.

**LA–MAN CONSTRUCTORS, INC., Appellee.**

**No. 09–83–140 CV.**

Court of Appeals of Texas, Beaumont.

March 1, 1984.

As Amended March 30, 1984.

Robert A. Meroney, Port Arthur, for appellants.

Randy Donato, Weitinger, Steelhammer & Tucker, Houston, for appellee.

OPINION

BROOKSHIRE, Justice.

Appeal has been taken from an order granting Writ of Mandamus against James Hawthorne, as Executive Director of the Housing Authority of the City of Port Arthur, and the Commissioners of the Port Arthur Housing Authority. The order was in favor of La-Man Constructors, Inc., Relator in the trial court.

On November 10, 1982, the order issued compelling Hawthorne and the Commissioners to raise revenue to pay and satisfy a certain judgment entered against the authority. The Court's order further adjudged and decreed that Relator's Petition for Writ of Mandamus was granted so payment might be paid in full of the final judgment in the amount of $135,000.00, plus interest in the additional amount of $33,509.58, plus post judgment interest. A hearing in September, 1982, was conducted culminating in the issuance of the order— the Respondents apparently proffering no evidence. The Housing Authority and its Director filed a motion to rehear the matter which, while forceful, was not granted by the trial court and the original order of mandamus stayed in full force and effect. Appeal followed.

The judgment sought to be collected by means of the writ was dated June 16, 1980, and was the result of a juried proceeding; where, in response to six special issues, it was decided that La-Man Constructors, Inc., recover $170,000.00, plus interest, from the Housing Authority.[1] On March 19, 1981, this Court of Appeals issued its opinion which determined that the trial court judgment should be affirmed in part and reversed and rendered in part. Vacated by this Court was that portion of the 1980 judgment which awarded the Plaintiff, La-Man Constructors, Inc., the sum of $35,000.00 for plywood, molding and so forth, as set out in the jury's answer to Special Issue No. 1(b), together with the interest thereon. The balance of the judg-

---

1. It is interesting to note that, in the 1980 judgment, the trial court decreed and ordered that La-Man Constructors, Inc., be allowed such writs and processes as may be necessary in the enforcement and collection of the judgment.

ment was, in all things, affirmed. Since June 19, 1981, La-Man Constructors, Inc., has tried to satisfy or at least partially satisfy the affirmed part of the judgment, but to no avail. A review and analysis of the prior opinion of this Court indicates that very substantial extra work was performed and completed by La-Man Constructors, Inc. Apparently, there was no real dispute at the time that the full $170,000.00 in extras was properly performed to renovate and modernize 15 buildings known as the Carver Terrace Apartments. Because part of the 1980 recovery ($35,000.00) was based upon evidence that did not have technical probative value, this Court ordered remittitur of such amount, affirming the balance of the judgment of $135,000.00 and dividing the court costs one-third against La-Man Constructors, Inc., and two-thirds against the Housing Authority of the City of Port Arthur, Texas. That prior opinion of this Court was not published pursuant to *TEX.R.CIV.P. 452, Sec. (b)*.

In Point of Error One, Appellants contend Relator's pleadings for mandamus were insufficient. We disagree.

 Requisites to mandamus are three in number: (1) a legal duty to perform a non-discretionary act; (2) a demand for performance of a non-discretionary act; (3) and a refusal to perform after demand. *Stoner v. Massey*, 586 S.W.2d 843 (Tex. 1979); *Bantuelle v. Renfroe*, 620 S.W.2d 635 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). The writ will issue to compel a public official or a public body to perform an official act when the Relator's right to have the act performed is clear. *Cobra Oil & Gas Corp. v. Sadler*, 447 S.W.2d 887, 895 (Tex.1968); *City of Ingleside v. Johnson*, 537 S.W.2d 145, 150 (Tex.Civ.App.—Corpus Christi 1976, no writ). The very judgment which the Relator now seeks to enforce has long since become final, even after review by this Court. We find, under this record, that the necessary requisites for mandamus are present and we further find, under our record, that the Relator's right to have the acts performed is clear. It is true that, in an action for mandamus, a greater cer-

tainty of pleadings is required and the necessary facts concerning the right must be stated clearly by direct and positive allegations. After a careful study of the Appellee's pleadings, we conclude that the same were sufficient to invoke jurisdiction of the District Court to determine the issues that led to the order granting mandamus relief.

In several points of error (ten through thirteen), Appellants contend that issuance of the order is useless and unavailing, commands acts impossible to perform, compels performance of a discretionary, non-ministerial act, and even that the order itself is vague in its command to "raise revenue" to satisfy the judgment.

 We note that had the judgment sought to be collected through mandamus proceeding been against an individual or usual corporate defendant, an adequate remedy would have been afforded by writ of execution. Such a writ, however, is of no avail against a public corporation of the nature of the Housing Authority for such is exempt from execution. But a municipal corporation is, nonetheless, as much bound to pay a judgment which the law has authorized against it as is an individual or corporate defendant obligated to pay such a judgment. *See Garrett v. City of Wichita Falls*, 334 S.W.2d 624 (Tex.Civ.App.—Fort Worth, 1960, no writ). No adequate remedy exists for our judgment creditor except mandamus, or possibly the eventual appointment of a receiver. *City of San Antonio v. Routledge*, 102 S.W. 756, 765 (Tex. Civ.App.1907, writ ref'd). *See also Garrett, supra*, at 626. Also, where the amount of demand is absolutely fixed and determined, as here by judgment, and it is the duty of the officers to provide for payment, mandamus may issue if performance is neglected or refused. *See City of San Antonio v. Routledge, supra*, at 766. Mandamus is employed usually to compel performance of a ministerial duty, which is the kind of duty that leaves no leeway in discretion or judgment. Generally the writ will not issue to review or control actions of public officers and boards involving discretion, but this rule has limitations. One

limitation is that the writ may issue in a proper case to correct a clear abuse of discretion, especially where there is no adequate remedy at law. *Hereford v. Farrar,* 469 S.W.2d 16 (Tex.Civ.App.—Austin, 1971, writ ref'd n.r.e.) In our case some leeway in raising the funds to satisfy the judgment is salutary to the Housing Authority.

██ We note our record shows that no attempt whatsoever has been made to pay off the just debt; abuse of discretion has been demonstrated. We hold, therefore, that the exception to the rule applies and mandamus will apply to the limited discretionary, non-ministerial acts, if any, underlying the Court's command to "raise revenue".

██ A writ of mandamus also will not issue to compel something that is impossible to do and will not issue if the granting of the writ would be fruitless. *Economic Opportunities, Etc. v. Bustamante,* 562 S.W.2d 266, at 267 (Tex.Civ.App.—San Antonio 1978, writ dism'd); *Parks v. Elliott,* 465 S.W.2d 434 (Tex.Civ.App.—Houston [14th Dist.] 1971, writ ref'd. n.r.e.). In addition, mandamus will not issue if for any reason it will be useless or unavailing. *See Myers v. Zoning & Plan, Com'n of City of W. Univ. Pl.,* 521 S.W.2d 322, at 326 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). Again, our record is brief and nowhere can we perceive impossibility, fruitlessness, or uselessness as issues.

██ Appellants assert generally that the order in question is too vague to enforce, but do not point with particularity to the part of the order that allegedly is too vague, do not state how the order is too vague, and, indeed, did not make a precise complaint to the trial court so that the trial judge could have had opportunity to clarify the order. We believe, therefore, that Appellants have waived complaint on the question of vagueness. *See Wm. S. Baker, Inc. v. Sims,* 589 S.W.2d 492 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.). Again, we perceive a limited arena of action—merely as to how to raise the funds—is advantageous to the Housing Authority.

██ In the interest of justice and judicial economy we have reviewed the order of the Court in its entirety as to whether it could be the basis of an order of contempt. We hold it can support a contempt order. To hold a person in contempt for disobeying a court decree, such decree must set out the manner and details of compliance in clear, specific and unambiguous language so that the parties subject of the court command will know with *some* degree of certainty what duties or obligations are imposed. The rights of parties should not rest on implication, or conjecture, but the language of the decree should be clear and unequivocal so that the parties will not be misled. *Ex Parte Brooks,* 604 S.W.2d 463 (Tex.Civ.App.—Tyler, 1980, no writ). In the instant case, the order commands the parties to "raise revenue". We find this to be crystal clear and meets the foregoing test. Of course, in this case exactly how revenue is to be raised is left up to those charged with running the Housing Authority. *See and compare City of San Antonio v. Routledge, supra,* at 759, (wherein command was made as to the source of the revenue to be raised). We do not believe, however, that the Court need necessarily concern itself with *how the money is to be raised in a reasonable time,* as by analogy, it need not concern itself with how money should be raised in enforcement of a child support decree. Points of Error Ten through Twelve are overruled.

██ Appellants' Points of Error Three through Six are without merit. We believe Appellants' attorney has misread the record in stating to us the "facts" concerning these points. Appellants' attorney points out, correctly, that two petitions for mandamus were filed by Relator. Appellants' attorney then states in his brief:

"No evidence other than that already in the pleadings was presented or was heard (see Order, Tr[.] 18, which states that the Petition was 'presented' but does not state that a hearing took place).

The sole basis for entry of the Order was, therefore, an unverified pleading without factual basis."

Omitted from Appellants' argument is the crucial part of the order of November 10, 1982, that the Court considered "the pleadings and other papers on file with the court, the evidence presented and argument of counsel". We also find other recitals and pronouncements in the record to the effect that a full evidentiary hearing was held on September 24, 1982, and that Appellants failed to put forward any evidence whatsoever. We hold that the record in this case shows an acceptable factual basis for the order providing for issuance of a writ of mandamus. *Pickard v. Castillo*, 550 S.W.2d 107, at 112 (Tex.Civ. App.—Corpus Christi, no writ). Points of Error Three through Six are overruled.

Several points of error (Seven through Nine)—being without merit—are asserted pertaining to two hearings held by the court after issuance of the mandamus. We will address the purpose of these hearings to clear up any confusion about their purpose.

Post-judgment Interrogatories and Request for Admissions were served on the Housing Authority and Answers were made thereto prior to the mandamus hearing. At the hearing, there was no formal record made of evidence by the court reporter.

The only record—in question and answer form—that we have concerns evidence brought forward *after* the initial mandamus hearing on a "Motion for Rehearing" and a "Hearing on Entry of Orders". The trial judge, however, determined that the Housing Authority *had absolutely no right at such late time—after the original mandamus proceeding—to present any evidence.* The "Motion for Rehearing" was thus disallowed. Thereafter, there was the "Hearing on Entry of Orders" held on January 7, 1983, where the trial judge made certain pronouncements from the bench. In the hearing of January 7, 1983, we find:

"THE COURT: (addressing Respondents' counsel) Let me clarify it. I want to get you straight and the record straight.

"I certainly want counsel to be aware of it. I felt that you failed to properly present your testimony on a Writ of Mandamus hearing which was scheduled November the what?

"MR. DONATO: (Relator's counsel). September 24th.

"THE COURT: Is that when we had the writ hearing?

"MR. DONATO: Yes, sir. The judgment was signed on November 10th.

"THE COURT: *Okay. In any event, whenever we had that hearing in September, there was no proof put on by the Housing Authority.* The fact is that at some subsequent time after I entered a judgment in that matter *you ascertained that perhaps the record was incomplete and that it might be appropriate that evidence be presented and that a record be made.* To *accomodate that lapse* I permitted you to reopen for the *sole purpose* of presenting testimony in the record that could be of whatever use you could *make of it on appeal.*

"*Okay. I did not grant a rehearing for the purpose of rehearing the case and then exercising a new order.* I did it simply as an accomodation to the extent that it was procedurally applicable to you after the facts to let you open and present testimony and utilize it, *if you could, on appeal.* If, in fact, it's improperly done, then you have to bear that burden. I'm not concerned about restructuring all of my orders in order to accomodate that. *I'm not going to do it for you and have never done it for anybody else.* What I did do because I felt there was—well, I don't want to say—*there was a lapse.* I will leave it at that. At the appropriate time when there should have been testimony presented it was not. But that's the full extent of it.

"Now, where we are today is simply to resolve it once and for all. I do not want

to have this matter presented to me, period, again...." (emphasis added)

La-Man Constructors, Inc., relies on *Monk v. Crooker*, 207 S.W. 194 (Tex.Civ. App.—Galveston 1918, no writ). In that case, contention was made that the judgment of the trial court was not correct upon the issues of fact raised by the pleadings and, even though the mandamus was granted as prayed for, the judgment was without merit. *Monk, supra*, was heard basically upon the pleadings and exhibits attached thereto and the admission of the parties—no live witness evidence was offered by the Respondents. The complaint, made after the mandamus was granted, was that there should be a further, second hearing. This contention was disallowed. Following *Monk, supra*, we conclude that because, here, there is no formal record of the first hearing and no findings of fact or conclusions of law filed or requested of the trial court, that our review is extremely limited.

■ Appellants aver, in another point of error, that there is a necessary party that was not before the trial court; that party being the Department of Housing and Urban Development (HUD), a federal agency. We do not agree that this party was necessary. The Housing Authority of Port Arthur did not, at any time, move to bring in this federal department. Of course, the Department of Housing and Urban Development is not a defendant cast in an adverse judgment. Indeed, there was no judgment or relief sought against HUD by La-Man Constructors, Inc. The complaint about the failure to join HUD comes too late on appeal. The failure to join or complain in the trial court waives any complaint regarding HUD—an entity that cannot be said to be indispensable to this matter. We hold that HUD was not a necessary party. *Vondy v. Commissioners Court of Uvalde Cty.*, 620 S.W.2d 104 (Tex. 1981).

We realize that *Monk, supra*, was a 1918 decision with no writ of error history. Therefore, in the interest of justice and economy in judicial administration, we will review the post-hearing testimony for the limited purpose of whether the trial judge abused his discretion. A fair summary of the testimony of Hawthorne, who was the only live witness proffered by the Housing Authority, was that paying off the judgment simply could not be done conveniently or *maybe* could not be done at all but, in any event, no real effort or endeavor was shown to have been made to pay it off or satisfy it partially.

Hawthorne said that the Housing Authority receives annual subsidies from HUD. All income goes to a trustee bank, being the First National Bank of Port Arthur, which distributes the money for various purposes. A part of the distribution is for extraordinary maintenance, being maintenance of the buildings. The Carver Terrace Apartments and the renovations were financed by monies from HUD. The cost of the improvements and renovations (not including extras) was added to the total permanent debt which was financed through the sale of federal government securities under the auspices of HUD. The annual, operating contract, including additional subsidies, can, and has been, amended usually on an annual basis. Hawthorne said that his organization has some type of guarantee for repayment of debts by means of this annual contractual contribution or subsidy from HUD and these subsidies are used to retire obligations. For some unclear reason the obligation of the judgment in question has not been retired.

According to Respondents' Exhibit No. 2, on or about September 30, 1982, $122,-631.23 had been used for the maintenance and operation of the properties which included *labor, materials and also contract cost.* The *annual contributions contract* has allowed for extras and additions to the original apartment complex. Hawthorne has discussed the judgment with various HUD field personnel, mentioning a Mr. Cox and a Mr. Fertack; but apparently there has been no real, substantial effort made to pay off the final, meritorious judgment owing by the Housing Authority or to obtain extra monies, either through the sale of

government securities or State bonds or through the annual contributions contract. There was also an indication from Hawthorne that after the litigation had been appealed and the 1980 judgment had become final, then HUD would take action on the same. But Hawthorne also testified that the Housing Authority has not really made a firm or substantial request and demand of HUD to retire the judgment.

■ Evidence was also presented at the second hearing that tended to show a basis for the issuance of bonds under State law to retire and discharge the judgment debt pursuant to *TEX.REV.CIV.STAT.ANN. Art. 1269k* (Vernon 1963). Hawthorne conceded that the Commissioners had broad authority to transact business for the Housing Authority *TEX.REV.CIV.STAT. ANN. Art. 1269k, Sec. 8(a), (b)* (Vernon 1963) and *possibly* could issue bonds to raise monies to satisfy La-Man Constructors, Inc. *TEX.REV.CIV.STAT.ANN. Art. 1269k, Sec. 14* (Vernon 1963). He at least acquiesced in the Relator's contention that all types of properties, real estate and personal, as well as rents, income and revenues, could be pledged to secure the bonds. Of course, these bonds would not be secured by a first mortgage. Hawthorne also opined that in case of default, under certain conditions, HUD would promptly take over and continue to operate and manage the properties. Hence, the low rental housing units and apartments and the benefits from them would definitely not be lost to the qualified tenants.

The record, thus, discloses no reversible error.

Finding no error, and finding the prerequisites of a writ of mandamus properly could have been found by the trial court, we must affirm the district judge's order.

AFFIRMED.