Amy ADLER

v.

LINCOLN HOUSING AUTHORITY et al.

No. 91–619–Appeal.

Supreme Court of Rhode Island.

April 14, 1993.

Lauren E. Jones, Jones Associates, Joseph Penza, Jr., Olenn & Penza, Providence, for plaintiff.

M. Durkan Cannon, Woonsocket, for defendants.

## OPINION

SHEA, Justice.

This case comes before the court on the plaintiff's appeal of the trial justice's denial of her motion for issuance of a writ of mandamus to compel payment of the judgment against the defendants. We vacate the trial justice's order and remand the case to the Superior Court for a review of facts to determine if the issuance of a writ of mandamus would be effectual.

This appeal is the latest chapter in a dispute between the parties that arose ten years ago. Amy Adler (Adler), plaintiff, was an employee of defendant town of Lincoln Housing Authority (LHA) and supervised by defendant John Palma (Palma), executive director of LHA. On February 5, 1982, Adler was terminated by Palma from her position as LHA's secretary/bookkeeper and leased-housing manager. It is undisputed that her termination resulted from her efforts to inform LHA's board of commissioners of Palma's alleged misfeasance. On March 18, 1982, the board of commissioners convened a hearing and sustained Palma's decision to terminate Adler.

Adler then brought a civil rights action in Superior Court against LHA and Palma under 42 U.S.C. § 1983, alleging that her termination was punishment for her exercise of constitutionally protected speech. The trial justice granted defendants' motion for a directed verdict. In our first encounter with this controversy, we reversed the directed verdict against Adler, reinstated the § 1983 claims against LHA and Palma, and remanded the case to the Superior Court for a new trial. *Adler v. Lincoln Housing Authority*, 544 A.2d 576 (R.I.1988). The defendants' attempt to obtain a review of this court's decision, by petition for the issuance of a writ of certiorari to the United States Supreme Court, was denied. *Palma v. Adler*, 488 U.S. 968, 109 S.Ct. 496, 102 L.Ed.2d 532 (1988).

Eventually the case was retried in the Superior Court as we had ordered. On February 23, 1989, the jury returned verdicts against both defendants for compensatory damages in the amount of $57,500 and against Palma for punitive damages in the amount of $50,000.[1] In addition, Adler's attorneys requested and were awarded attorneys' fees pursuant to 42 U.S.C. § 1988. The defendants then came before this court a second time and appealed both the jury award and the fee award. They were ordered to show cause why their appeal should not be summarily denied and dismissed. On April 26, 1990, this court decided that cause had not been shown, and the appeal was dismissed accordingly. The trial justice awarded additional attorneys' fees from the date of the first award up to and including May 3, 1990.

It is the proceedings to satisfy the judgments that brings the case before us now for the third time. On May 3, 1990, Adler computed the total amount due her, including the amounts sought in the second fee request, and submitted it to LHA and Palma. Having received no response, she filed a petition for issuance of a writ of mandamus with respect to the amounts then owed by LHA on May 18, 1990. Both LHA and Palma jointly objected to the petition for issuance of a writ of mandamus, and a hearing was held May 30, 1990. The trial justice reserved decision at that time.

Also on May 18, 1990, an execution was issued against defendants. Adler also filed a number of other motions in order to collect the judgment with respect to Palma. In this appeal we are concerned only with the execution and motion for a writ of mandamus filed on that day. On August 3, 1990, LHA moved to quash the execution and vacate the return. The trial justice reserved decision and entered an order staying the proceedings on August 14, 1990.

The trial justice rendered a decision on February 13, 1991, on all the pending matters. In that decision the trial justice ruled that the execution should be quashed, "in

---

1. The punitive damage award was against Palma alone. LHA was not subject to a punitive damage award under the ruling in *City of New-port v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

that R.I.G.L.1956 (1988 Reenactment) § 45–27–14 exempts public housing authorities from execution." Adler then filed a motion to reconsider and clarify the decision. An amended decision was issued on April 26, 1991, which expanded on that of February 13, 1991, by stating:

"The plain and clear language of § 45–27–14 exempts all property of the authority from levy and sale by execution. Such laws of the forum are controlling regarding the exemption of property from execution, these exemptions constituting remedies rather than rights. * * * Consequently, counsel's additional argument that § 45–27–14 is a state statute which hampers an individual's rights per 42 U.S.C. § 1983 is without merit. At issue here is exemption of property from execution, not immunity from liability of persons."

In addition, the trial justice denied Adler's petition for a writ of mandamus and went on to say that "the court denies plaintiff's prayer for a writ of mandamus and instead leaves counsel to their remedies under available statutes for supplementary proceedings, § 9–28–1 et seq., and per R.C.P. 69."

Following the issuance of the amended decision, plaintiff's counsel next filed a motion for instructions in regard to the preparation of judgment on June 3, 1991. The trial justice responded in a letter to plaintiff's counsel by reiterating that mandamus against LHA, other than in its capacity as garnishee of Palma's assets, was denied. Subsequently a judgment was entered, and Adler initiated her appeal to this court.

The primary issue in this latest appeal concerns the trial court's denial of the motion for issuance of a writ of mandamus. Adler argues that such denial has left her with only a moral victory, a valid judgment with no means of collecting her damage award. We agree.

## I

■ In the amended decision the trial justice denied Adler's prayer for a writ of mandamus and "left counsel to their remedies under the available statutes for sup-

plementary proceedings, § 9–28–1, et seq. and per R.C.P. 69." Presumably the trial justice's denial of the writ was based on a belief that supplemental proceedings were indeed available to Adler that would give her an adequate remedy. This conclusion is not correct, however, because the supplemental proceedings under G.L.1956 (1985 Reenactment) chapter 28 of title 9 are not applicable to LHA, a public housing authority.

■ Governmental bodies generally enjoy the privilege of exemption of property from execution. In *Richmond v. Kettelle*, 42 R.I. 192, 206, 106 A. 292, 298 (1919), this court relied on 2 Black, *The Law of Judgments*, § 985a at 1445 (2nd ed. 1902) when it held that a judgment against a town treasurer cannot be collected by execution. This court quoted Black in emphasizing that " '[a]s a general rule, the property of a municipal corporation necessary to the exercise of its functions * * * or property which has been destined and set apart by statute as a source of permanent revenue for the corporation, cannot be seized or sold on execution against it." ' 42 R.I. at 207, 106 A. at 298. Execution could not issue against a town because "there is no property of the town subject to the lien of such execution * * *." *Id.* at 206, 106 A. at 297.

■ The "long-standing principle of exemption of public property" is justified by the public purpose for which municipalities and other public corporations are created. *Hamrick Construction Corp. v. Rainsville Housing Authority*, 447 So.2d 1295, 1299 (Ala.1984).

"The reason for the exemption is obvious. Municipal corporations are created for public purposes and for the good of the citizens in their aggregate or public capacity. That they may properly discharge such public functions corporate property and revenues are essential, and to deny them these would impede and in some instances practically destroy the purposes of their creation." *Id.* (quoting 10 E. McQuillen, *The Law of Municipal Corporations*, § 28.57 (3d rev. ed.1981)).

An alternative to execution for a plaintiff with a valid judgment against a municipality or public corporation may be mandamus which compels municipal officials to pay a valid judgment. 447 So.2d at 1299.

We have repeatedly held in our past decisions that a housing authority is clothed with some of the attributes of a municipal body. *Little v. Conflict of Interest Commission*, 121 R.I. 232, 238–39, 397 A.2d 884, 888 (1979). A housing authority constitutes " 'a public body and a body corporate and politic.' " *Jackvony v. Berard*, 66 R.I. 290, 295, 18 A.2d 889, 892 (1941). A housing authority is "a public or quasi-municipal corporation which exercise[s] police powers in the general public interest * * *." *State ex rel. Costello v. Powers*, 80 R.I. 390, 394, 97 A.2d 584, 586 (1953). A housing authority has "a dual nature which partakes of a public as well as a private character." *Housing Authority of Woonsocket v. Fetzik*, 110 R.I. 26, 33, 289 A.2d 658, 662 (1972) (citing *Parent v. Woonsocket Housing Authority*, 87 R.I. 444, 448, 143 A.2d 146, 148 (1958)). In *Fetzik* this court pointed out:

> "The housing authority is not a political subdivision of the state. Once created it becomes an autonomous body, subject only to the limits of power imposed by law. * * * [A]ctually a housing authority is one of a large class of corporations created by the government to undertake public enterprises in which the public interests are involved to such an extent as to justify conferring upon such corporations important governmental privileges and powers, such as eminent domain, but which are not created for political purposes and which are not instruments of

the government created for its own uses or subject to its direct control." 110 R.I. at 33, 289 A.2d at 662.

In G.L.1956 (1991 Reenactment) § 45–27–14 the Legislature codified the exemption from execution inherent under the holding of *Richmond v. Kettelle*. The statute provides:

> "*Limitation on remedies against property of authority.*—No interest of the authority in any property, real or personal, shall be subject to sale by the foreclosure of a mortgage thereon, either through judicial proceedings or the exercise of a power of sale contained in the mortgage, except in the case of the mortgages provided for in § 45–27–10. *All property of the authority shall be exempt from levy and sale by virtues of an execution, and no execution or other judicial process shall issue against the authority.* No judgment against the authority shall be a charge or lien upon its property, real or personal." [2] (Emphasis added.)

Under the provisions of § 45–27–14 that mirror the holding in *Richmond v. Kettelle*, it is clear that LHA's property, like the property of other municipal and quasi-municipal corporations, is exempt from the usual process of execution to satisfy ordinary judgments against the authority. A public corporation, LHA's property is dedicated to public purposes and thus exempt from execution.[3]

The trial court incorrectly found that counsel for plaintiffs could pursue their remedies "under the available statutes for supplementary proceedings" because these

---

**2.** The only exception authorized by statute to the exempt status of a housing authority's property is that G.L.1956 (1991 Reenactment) § 45-27-14 does permit execution, levy, and sale against particular property of a housing authority to satisfy a deficiency judgment on a foreclosed mortgage.

**3.** Other jurisdictions have reached this same conclusion under similar statutes providing an exemption from execution for the property of a public housing authority. *See Hamrick Construction Corp. v. Rainsville Housing Authority*, 447 So.2d 1295 (Ala.1984) (statutory language identical to § 45–27–14 held to exempt housing-

authority property from execution because public-housing projects are public uses; no violation of equal protection and due process); *Housing Authority of Carrollton v. Ayers*, 211 Ga. 728, 88 S.E.2d 368 (1955) ("the statute creating the Housing Authority specifically provides, that all real property of the Housing Authority is totally exempt from levy and sale by execution"); *Hawthorne v. La–Man Constructors, Inc.*, 672 S.W.2d 255 (Tex.Civ.App.1984) ("[s]uch a writ, however, is of no avail against a public corporation of the nature of the Housing Authority for such is exempt from execution").

methods were not available against a public housing authority.

## II

Although a municipality may enjoy an exemption from execution on its property, a judgment debtor is not without a remedy. The judgment debtor is entitled to mandamus to compel payment. *Richmond v. Kettelle*, 42 R.I. at 206–07, 106 A. at 297. "[M]andamus [is] the proper proceeding to compel payment of [a] judgment" against a municipality. *Id.* "The writ of mandamus, as thus employed, is in the nature of the statutory writ of execution, and is legally equivalent thereto." *Id.* at 207, 106 A. at 298.

The *Richmond* court again relied on 2 Black, *The Law of Judgments*, § 985a at 1445 to support its holding:

" '[I]t is now well settled that the writ of execution cannot be employed at all when the judgment debtor is a municipality. In these circumstances, the legal method of enforcing the payment of a judgment against a municipal corporation is by a writ of mandamus * * * commanding the officers of the corporation to pay the judgment out of public funds in their hands, or to levy and collect taxes sufficient in amount to discharge the obligation.' " 42 R.I. at 207, 106 A. at 298.

Mandamus is generally recognized as a proper remedy to enforce a public official's duty to pay a judgment debt and to compel an appropriation. 17 E. McQuillen, *The Law of Municipal Corporations*, § 51.46 and n.2 at 532–34 (3d rev. ed. 1982) (citing cases from seventeen jurisdictions).

The allowance of mandamus to issue against a housing authority is clearly justified under both the holding in *Richmond v.*

*Kettelle* and the unambiguous statutory language of § 45–27–14. A denial of mandamus would leave Adler without any recourse. The plaintiff cites a large number of cases from other jurisdictions, that have considered this question and extended the application of mandamus to public housing authorities. We find these cases to be persuasive on the issue.[4]

The Supreme Court of Alabama addressed the precise issue of whether a housing authority whose property is exempt from execution is subject to mandamus to compel payment of a valid judgment in two parallel decisions. *Rainsville Housing Authority v. Hamrick Construction Corp.*, 456 So.2d 38 (Ala.1984); *Hamrick Construction Corp. v. Rainsville Housing Authority*, 447 So.2d 1295 (Ala. 1984). In these cases the court construed an Alabama statute identical to our § 45–27–14.

In *Hamrick* the lower court's quashing of the plaintiff's executions against two housing authorities was upheld, but the court noted that mandamus may be proper. 447 So.2d at 1299. The court in *Rainsville* upheld the lower court's issuance of a writ of mandamus ordering the housing authorities to pay the judgments. 456 So.2d at 39. Concluding that "[h]ousing authority officers are thus subject to mandamus under the same rationale and in the same circumstances as are public officials," the court rejected the housing authorities' arguments. *Id.* The authorities also failed in their contention that they had no duty to pay the judgments:

"[T]he judgments are lawful obligations imposed upon the authorities even though they do not constitute liens against the authorities' property. The

---

4. *See Garcia v. City of South Tucson*, 135 Ariz. 604, 605–06, 663 P.2d 596, 597–98 (Ariz.App. 1983) ("[m]andamus is a proper remedy to enforce a city's duty to pay a judgment debt and to compel an appropriation"); *County of Washoe v. City of Reno*, 77 Nev. 152, 157, 360 P.2d 602, 604 (1961) ("[i]f a judgment based on a claim for money should be obtained against the county, and the county commissioners then should refuse to pay such final judgment, mandamus then would be an appropriate remedy"); *Alberts*

*v. Urban Redevelopment Authority*, 2 Pa. Commw. 167, 169, 277 A.2d 361, 362 (1971) ("[w]hen the condemnor is a municipal corporation, a writ of mandamus is the proper way for a property owner who has been awarded damages in condemnation proceedings to compel payment on a judgment"); *Whitmire v. Kriegel*, 678 S.W.2d 567, 570 (Tex.Civ.App.1984) ("[m]andamus will lie to compel a municipality, exempt from writ of execution, to pay a lawful judgment debt").

legislature gave housing authorities the power '[t]o sue and be sued,' Code 1975, 24–1–27(a)(22). The fact that the legislature protected housing authority property from judgment liens does not bar the issuance of a writ of mandamus in the extraordinary case where housing authority officers refuse to pay validly imposed judgments." 456 So.2d at 39.

The Alabama Court is not alone in its finding that a municipal housing authority is properly subject to mandamus to compel the payment of a valid judgment. *Housing Authority of Carrollton v. Ayers*, 211 Ga. 728, 88 S.E.2d 368 (1955); *Hawthorne v. La-Man Constructors, Inc.*, 672 S.W.2d 255 (Tex.Civ.App.1984). These cases all illustrate that the denial of mandamus is wrong as a matter of law when no other adequate remedy exists.

### III

■ In Rhode Island "a writ of mandamus will issue only where the petitioners have a clear legal right to have the act done which is sought by the writ; and where the respondents have a ministerial, legal duty to perform such act without discretion to refuse; and where the petitioners have no plain and adequate remedy at law." *Gormally v. Cannon*, 119 R.I. 771, 776, 383 A.2d 582, 585 (1978). *See also O'Neill v. Carr*, 522 A.2d 1213, 1214–15 (R.I. 1987) (citing *Buckley v. Affleck*, 493 A.2d 828 (R.I.1985); *Kritz v. Cianci*, 474 A.2d 1248 (R.I.1984); *Bionomic Church of Rhode Island v. Gerardi*, 414 A.2d 474 (R.I.1980)).

"It is well settled that mandamus will issue to compel a public officer, board, or commission to perform a ministerial duty." *Aniello v. Marcello*, 91 R.I. 198, 202, 162 A.2d 270, 272 (1960) (citing *Newman v. Mayor of Newport*, 73 R.I. 435, 57 A.2d 180 (1948); *McLyman, ex rel. Hogan v. Holt*, 51 R.I. 96, 151 A. 1 (1930)). A housing authority may be compelled to perform a ministerial duty. *McKinnon v. Housing Authority of Pawtucket*, 114 R.I. 686, 688, 338 A.2d 517, 518 (1975). However, it should be noted that "[t]he writ will not issue to compel a

public officer to perform an act the performance of which rests within his discretion." *Id.* (citing *Izzi v. Warwick School Committee*, 82 R.I. 76, 105 A.2d 818 (1954)).

■ The plaintiff correctly argues that the payment of a valid judgment against LHA is not discretionary but rather a ministerial duty. Like the Alabama public housing authority, a Rhode Island housing authority has been given the power by the Legislature "to sue and be sued." G.L. 1956 (1991 Reenactment) § 45–25–15(1). Adler's claim against LHA is a liquidated judgment. This judgment became final when this court denied and dismissed defendants' second appeal on April 26, 1990. *Welsh Manufacturing, Division of Textron, Inc. v. Pinkerton's, Inc.*, 494 A.2d 897, 898 (R.I.1985). This final judgment gave Adler a clear legal right to her awarded damages. In *Richmond v. Kettelle* we specifically held that the town treasurer "was bound to take notice of these judgments and to proceed to provide for their payment." 42 R.I. at 211, 106 A. at 299. Clearly LHA had a ministerial duty to pay this valid judgment and chose to ignore it. Upholding the trial justice's denial of mandamus in situations in which the housing authority is exempt from execution on its property could make suits against a housing authority futile and contradict § 45–25–15(1), which specifically allows such suits.

Notwithstanding Adler's persuasive argument that mandamus should issue, a practical limitation does exist on this extraordinary remedy. This court has ruled that "[t]o warrant the issuance of a writ of mandamus, it must appear that the writ will be effectual as a remedy." *Buckley v. Affleck*, 493 A.2d 828, 830 (R.I.1985) (citing *Aniello v. Marcello*, 91 R.I. 198, 202–03, 162 A.2d 270, 272 (1960); *McLyman, ex. rel. Hogan v. Holt*, 51 R.I. 96, 98–99, 151 A. 1, 2 (1930)). According to LHA, it is operating at a deficit and unable to pay the judgment, making mandamus ineffectual. Although inability to pay may be a valid defense to mandamus, it is not considered in a vacuum.

Adler relies on § 45–27–1, which specifically grants LHA "the power to issue bonds, from time to time in its discretion, for any of its corporate purposes," in her argument that inability to pay alone is not a valid defense to mandamus. The Superior Court has the authority to order LHA to raise revenue by issuing bonds to pay the judgment when issuing a writ of mandamus. Such an order would only be proper when it relates to a ministerial duty.

The question remains, however, of whether such an order to issue bonds would impinge upon LHA's discretionary functions. It appears from the language of § 45–27–1 that the power to issue bonds is purely discretionary. Thus a writ of mandamus ordering the issuance of such bonds would ordinarily be an improper intrusion on discretionary authority. In circumstances in which a clear abuse of discretion is evident, however, a writ of mandamus may be proper even when the duty in question is purely discretionary .

> "The writ of mandamus is most frequently used to compel the performance of some ministerial duty on the part of a public officer, board or commission. If the performance of the duty involves the exercise of discretion or judgment, the writ will not be issued except in cases where there has been an abuse of discretion." *McLyman, ex rel. Hogan v. Holt,* 51 R.I. at 98, 151 A. at 2.

Relying on *Hawthorne v. La–Man Constructors, Inc.,* 672 S.W.2d at 259, Adler argues that mandamus is justified to order LHA to exercise its discretionary authority to raise revenue because LHA has abused its discretion in not paying the judgment or making any attempt to do so.

Adler's assertion that mandamus should issue when there is an abuse of discretion is compatible with this court's previous findings. This court has noted that "[a]lthough the public officer may exercise a discretionary function, that discretion may not be so boundless and uncontrolled as to allow the official to negate and nullify a statutorily established merit system." *Parente v. Southworth,* 448 A.2d 769, 772 (R.I.1982) (citing *State ex rel. Alford v.*

*Willoughby Civil Service Commission,* 58 Ohio St.2d 221, 390 N.E.2d 782 (1979)). In addition, this court has stated that mandamus may be used to require the reasonable exercise of discretion. *Newman v. Mayor of Newport,* 73 R.I. at 436, 57 A.2d at 181.

Although Adler's argument on LHA's abuse of discretion is persuasive, it is not conclusive on the effectiveness of the proposed writ. This defendant's further contention that it is prohibited by the federal government from obtaining loans under its Consolidated Annual Contribution Contract (CACC) adds yet another layer of ambiguity on the question of mandamus. It appears however, that § 422 of the CACC is not a blanket prohibition on LHA's ability to secure loans but rather requires prior federal-government approval for loans relating to projects other than those provided for under the CACC. Having only part of the CACC in this record makes determination of the constraints on LHA's authority inconclusive.

The supplemental procedures of §§ 9–28–1 and 9–28–3 to which the trial justice referred are not available to Adler because of LHA's exemption from judicial process under § 45–27–14. Thus the motion for issuance of a writ of mandamus is properly before this court. Whether LHA actually has reachable assets or the authority to issue bonds or obtain loans under the constraints of the CACC is a factual issue that remains to be resolved. If LHA does not have reachable assets or the authority to issue bonds or to obtain loans, then the issuance of a writ of mandamus would be ineffectual and improper.

For these reasons the plaintiff's appeal is sustained, the trial court's denial of the issuance of the writ of mandamus is vacated, and the case is remanded to the Superior Court for a hearing to determine whether the issuance of a writ of mandamus would be effectual.