## William J. NYE

v.

## The CITY OF WARWICK et al.

### No. 98–174–Appeal.

Supreme Court of Rhode Island.

May 27, 1999.

Kimberly Ann O'Connell, Seth H. Handy, Providence.

William J. Nye, pro se.

### ORDER

The plaintiff, William J. Nye, appeals pro se from a Superior Court order granting the defendants' motion to dismiss. We ordered the parties to show cause why we should not resolve this appeal summarily. None having been shown, we proceed to do so.

In August 1997, plaintiff, a resident of defendant city of Warwick (city), filed a complaint against the city and defendant Mayor Lincoln D. Chafee (mayor) in the District Court, seeking to "compel the city to * * * abide by [article 6, section 6–3(4) of the Warwick City Charter (charter) ]." [1] According to plaintiff, "[t]his law requires the city to produce a complete financial statement at the end of each fiscal year," but "the city's financial statement for the fiscal year ending 30 June 1997 will not be ready until after the end of December, at least six months after the end of the fiscal year." In September 1997, plaintiff successfully moved to transfer this action for injunctive relief to the Superior Court. Thereafter, the city moved to dismiss plaintiff's complaint, arguing that (1) plaintiff did not have standing to bring the action because he failed to plead a specific injury to himself distinct from the public at

large and (2) plaintiff could not succeed on the merits of his claim for injunctive relief. Prior to a determination on the motion, plaintiff sought to have his complaint construed as a petition for a writ of mandamus.

After taking the dismissal motion under advisement, the Superior Court issued a bench decision. Reasoning that plaintiff had not suffered any injury that was different in kind from the public at large, the hearing justice determined that plaintiff did not have standing to bring the action. Additionally, in concluding that a writ of mandamus was not the proper method to compel a discretionary act, the court ruled that "[t]he charter language is sufficiently broad so as to allow the finance director considerable discretion as to how and when he will prepare and submit the financial statement." The hearing justice further held that:

> "The mandamus will only issue where the duty to be enforced demands no special discretion, judgment or skill. Here there is no allegations [sic ] that the finance director failed to prepare the requisite financial statement.
>
> "The allegation is that he did it in a fashion that is not acceptable to the plaintiff. Whether the statement is audited, unaudited, how and when it is compiled is a question for the professional judgment of the finance director. It is the discretionary aspects of the finance director's duty which the plaintiff seeks to compel and not the legal duty itself."

Because the court considered matters outside of the pleadings, it treated defendants' motion as one for summary judgment and entered an order granting defen-

---

1. Article 6, section 6–3 states, in pertinent part:

"The director of finance shall have charge of the administration of the financial affairs of the city and to that end he shall have authority and shall be required, acting

through the proper division of the department to:
" * * *
"(4) Submit to the mayor, as of the end of each fiscal year, a complete financial statement."

dants' motion. The plaintiff then filed a timely notice of appeal.

On appeal, plaintiff raises two issues. First, he maintains that contrary to the ruling of the hearing justice, he has standing to bring this action as a resident of the city of Warwick because he has "a clear interest in the actions/inactions of his own local government." Second, he argues, this case is of substantial public interest, and therefore, this Court should waive any issues relative to standing.

A writ of mandamus will issue only where (1) the plaintiffs have a clear legal right to have the act done that is sought by the writ, (2) the defendants have a ministerial, legal duty to perform the act without discretion to refuse, and (3) the plaintiffs have no plain or adequate remedy at law. *See Adler v. Lincoln Housing Authority,* 623 A.2d 20, 25 (R.I.1993); *Daluz v. Hawksley,* 116 R.I. 49, 52, 351 A.2d 820, 822 (1976). In *Daluz,* the plaintiffs were citizens and taxpayers who sought a writ of mandamus ordering the State of Rhode Island General Treasurer and members of the State Investment Commission to allow the plaintiffs to inspect and use various records and documents regarding the administration, investment, and management of public monies. The defendants moved to dismiss the plaintiffs' complaint, arguing that the plaintiffs had failed to join the Attorney General as an indispensable party and that the plaintiffs lacked standing to maintain the action individually. The Superior Court granted the defendants' motion, and the plaintiffs appealed.

On appeal, this Court recognized that a private individual can apply for a writ of mandamus "only where he has some private or particular interest to be pursued or protected, *independent of that which he holds in common with the public at large;* and that it is for public officers, exclusively, to apply for the writ where public rights only are to be subserved." *Daluz,* 116 R.I. at 52, 351 A.2d at 823 (emphasis added); *see also O'Brien v. Board of Al-*

*dermen,* 18 R.I. 113, 25 A. 914 (1892) (establishing this rule).

In *Daluz,* we held that the plaintiffs did have standing to seek the issuance of a writ of mandamus because the plaintiffs alleged that they were beneficiaries of the accounts and funds administered by the defendants. We found that based upon this allegation, the plaintiffs "established they [were] possessed of a particular right and interest which [was] different and independent of that right which the [held] in common with the public at large." 116 R.I. at 53, 351 A.2d at 823. Unlike the plaintiffs in *Daluz,* however, plaintiff in this case does not possess a special or particular interest, which is independent of the other residents of the municipality, in having defendants release a financial statement on or prior to the end of the fiscal year. As aptly noted by the hearing justice, "the language of the charter provision at issue * * * is for the benefit of the mayor in the exercise of his duties and not for the benefit of a citizen who wishes to act as a watch dog." Thus, we agree that plaintiff lacked standing to raise this issue because he has not alleged a discrete "injury in fact." *See Pontbriand v. Sundlun,* 699 A.2d 856, at 861–62 (R.I.1997); *Burns v. Sundlun,* 617 A.2d 114, 116 (R.I.1992). However, even if plaintiff were able to do so, his claim lacks merit in any event for the reasons discussed below.

The plaintiff contends that the hearing justice misinterpreted the charter when she concluded that the finance director has "considerable discretion as to how and when he will prepare and submit the financial statement." In his supplemental memorandum to this Court, plaintiff argues that "the outcome of this appeal is strongly dependent on the answer to the question: What is the correct interpretation of the charter?" Further, plaintiff maintains that the city's reliance upon an erroneous definition for the "as of" language in § 6–3(4) renders the city's entire argument ineffective with respect to the timeliness of the finance director's submis-

sion of the financial statements for the city's 1997 fiscal-year end. We disagree. In our opinion, the correct interpretation of this provision is that the finance director can and, indeed, must prepare and submit a financial statement for the city "as of" the fiscal-year end, but he can do so only on a date *after* that fiscal-year end has passed. This is so because the finance director must have the benefit of all financial transactions that occurred through and including the last day of the city's fiscal year *before* he can possibly submit any financial statement that is accurate "as of" that date. Thus, as a practical matter, the finance director must submit the financial statement after the fiscal year already has concluded. How much after, the charter does not say, but in no event can it be said that the city's finance director had a ministerial legal duty to submit the 1997 year-end financial statement on the last day of the city's fiscal year. In this respect, the charter is no different than other state laws which recognize that the appropriate officials need not submit a year-end financial statement on or prior to the expiration of the public entity's fiscal year. *See, e.g.,* G.L.1956 § 45–10–5 (requiring cities and towns in Rhode Island to file their respective audits of the preceding fiscal year with the State Director of Administration and the State Auditor General "not later than six (6) months after the close of the fiscal year"); *see also, e.g.,* G.L.1956 § 35–1–5 (requiring quarterly financial statements regarding the state's financial condition to be released to the public within forty-five calendar days of the end of each quarter).

The plaintiff also seeks to raise a new issue in his supplemental memorandum to this Court. He argues that the city, prior to a recent election, attempted "to mislead the voters regarding the current requirements of the city charter" by misinforming voters in the Warwick Voters' Guide that no time period is established for submitting a financial report rather than telling them that "the time frame is currently as of the end of each fiscal year." It is well settled that this Court will not review is-

sues on appeal that a party did not raise before the lower court. *See Montecalvo v. Mandarelli,* 682 A.2d 918, 926 (R.I.1996). In any event, for the reasons previously, this claim is meritless.

For these reasons, we deny and dismiss the plaintiff's appeal and affirm the Superior Court's judgment.