**VIRGINIA L. GIBBONS, Plaintiff**

**v.**

**AMERICAN SAMOA GOVERNMENT,
and DOES I through 10, inclusive, Defendants.**

High Court of American Samoa
Trial Division

CA No. 128-93

August 29, 2005

Before KRUSE, Chief Justice.

Counsel: For Plaintiff, William H. Reardon

ORDER DENYING APPLICATION FOR WRIT OF EXECUTION

On July 2001, Plaintiff Virginia Gibbons ("Gibbons") was awarded a substantial money judgment against the American Samoa Government ("ASG"). To date, however, over 4 years later, ASG has failed to satisfy that judgment. In fact, ASG has not even begun the process of satisfying the judgment and thus has not offered Gibbons any money whatsoever. On July 14, 2005, Gibbons applied for a writ of execution, asking this court to seize, and then sell ASG property to satisfy the judgment. For

reasons given, the post judgment remedy sought by Gibbons is not available.

## Discussion

Although the Government Tort Liability Act, A.S.C.A. §§ 43.1201 *et seq.*, ("GTLA") does not explicitly authorize the execution against ASG property, Gibbons nonetheless argues that § 43.1203(d) does so implicitly by providing that "[t]he government is liable . . . in the same manner and to the same extent as a private individual . . . ." She reads this statutory language as also exposing ASG to the same collection mechanisms that would apply to private parties.

■ We disagree. The GTLA, A.S.C.A. § 43.1203(a), as an instance of waiver of sovereign immunity on ASG's part, consenting to be sued, speaks only to the issue of liability. The suggestion that this enactment necessarily extends consent to be amenable to any and all post-judgment remedies available to a private party, is unfounded.

■ First, the overwhelming weight of authority among the states is that consent to be sued does not give consent to a seizure or attachment of property owned, controlled and operated by a sovereign government. Some state courts have held that if writs of execution against the government are to be allowed, they must be expressly authorized by statute. *See Nev. Dep't of Highways v. Olsen*, 334 P.2d 847, 848 (Nev. 1959) ("The writ of execution must be quashed for the reason that execution cannot properly be levied against the State in the absence of statue granting such right."); *Berek v. Metro. Dade County*, 396 So.2d 756, 758 (Fl. Dist. Ct. App. 1981) ("Whatever rights of recovery against a state are given to a claimant must, in our view, affirmatively appear in the waiver of immunity statute and cannot be read into it."); *Ky. Dep't of Highways v. Cir. Ct. in and for the County of Bullitt*, 365 S.W.2d 106, 108 (Ky. 1963) ("It is general doctrine that judgments against a state . . . in the absence of an express provision otherwise, cannot be enforced by the ordinary processes of law"); *Madison County v. Sch. Dist. No. 2 of Madison County*, 27 N.W.2d 172, 177 (Neb. 1947) ("As a general rule, in the absence of a statute expressly granting such a right, the land and property of a state . . . is not subject to seizure under general execution").

■ Other state courts have used public policy grounds in finding that government property should be immune from writs of execution. In *Adler v. Lincoln Hous. Auth.*, 623 A.2d 20, 22-23 (R.I. 1993), the Supreme Court of Rhode Island found that government property in a municipal corporation should be exempt from execution because the corporation and its property are created for the public good and should therefore be used for the good of the citizens. In *Berek*, 396 So.2d at

758, a Florida appeals court found that government property should not be subject to execution for the same reason that governments are given general immunity: to protect the public treasury against wasteful encroachments. In *City of Chicago v. Hasley*, 1861 WL 4073 at *1 (Ill. 1861), the Supreme Court of Illinois found that if property from public corporations were subject to execution, creditors could obtain control over the city's hospitals, jails and fire engines, a situation that clearly should be avoided. *See also Delta County Levee Improvement Dist. No. 2 v. Leonard*, 516 S.W.2d 911, 912 (Tex. 1975) ("Public policy exempts political subdivisions of the state performing government functions from execution or garnishment proceedings."); *American-La France & Foamite Indus. v. Town of Winnfield*, 168 So. 293, 295 (La. 1936) ("Property dedicated to public use is owned by the public and is exempt from seizure and sale for municipal debts. Granting liens on public property is against public policy.").

These precedents are both sound and persuasive. Indeed, from a public policy perspective, it does not take too much in the way of imagination to see why it would not be in the best interest of the public and the orderly function of government if a judgment creditor is free to seize public property, such as the courthouse where the plaintiff secured her judgment in the first place. In another context, the Fono has alluded to this public policy by specifically excluding the government and any of its public agencies from third-party garnishment proceedings, without the prior approval of the Governor. *See*. A.S.C.A. §43.1803(b).

Moreover, the *Fono*, we believe, would have clearly said so if the statutory construction sought by Gibbons, rendering ASG property subject to execution, was intended. The GTLA does in fact detail available post-judgment remedies, whereby the waiver exercise embodied by the GTLA is not therefore a mere empty gesture. In §43.1212(a), the *Fono* specifically addressed the post-judgment remedy issue by providing:

> [W]hen a judgment against the government under the [GTLA] has been rendered, the Treasurer *shall* pay any such . . . judgment which does not exceed the sum of $25,000 in connection with *any* judgment for personal injury . . . .

[Emphasis added.] The enactment then goes to identify the actual fund from which such payments shall be made by the Treasurer. Moreover, GTLA, §43.1212(c), additionally requires in the event that:

judgment [is] rendered in excess of the amount for which payment is allowed by subsection (a), the Governor *shall* forward legislation appropriating funds for the payment of such amount to the Legislature, at the next regular session.

[Emphasis added.]

 The bottom line with these enactments is that two named officials within the executive branch, namely the Treasurer and Governor, are mandatorily charged with the statutory duty of discharging the ASG judgment debt expeditiously. Post-judgment remedy, therefore, is not resort to willy nilly execution against government property; rather, the remedy lies against the named officials charged with the clearly ministerial duty of taking certain specifically identified steps in satisfying a tort judgment against ASG. In a word, the GTLA is talking "mandamus," and not "execution."[1]

For reasons given, the application for a writ of execution is denied. It is so ordered.

---

[1] Although the GTLA is silent as to what happens if the *Fono* should fail to act on an administration request to pay a judgment against the ASG, one thing is quite clear, the judgment debt will not disappear, and presumably post-judgment interest will continue to mount. Failure to satisfy a judgment against the government is neither contemplated nor allowed by the GTLA.